UNIVERSITY DISTRIBUTING CO. v. UNITED STATES.

No. 7065.

District Court, D. Massachusetts.

March 14, 1938.

collected on the untenable theory that a jigsaw puzzle of more than 50 pieces is a game.

The defendant has insisted upon the granting of its motion to dismiss the action before any further proceedings could be had. This insistence is the occasion for the numerous exceptions to the admission of evidence with which the stenographic record is replete. The motion is in substance that "this Court is without jurisdiction to hear and determine this cause of action" because barred by section 3226 of the Revised Statutes of the United States, as amended by section 1103 of the Revenue Act of 1932, 26 U.S.C.A. §§ 1672–1673, "for the reasons set out in the affidavit for respondent." The affidavit was in substance that the claim for refund, a copy of which was annexed to the affidavit, did not satisfy the requirements of section 621 (d) of the Revenue Act of 1932, 26 U.S.C.A. § 1420 et seq. note, in that it did not establish "in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, (1) that he has not included the tax in the price of the article with respect to which it was imposed, or collected the amount of tax from the vendee, or (2) that he has repaid the amount of the tax to the ultimate purchaser of the article, or unless he files with the Commissioner written consent of such ultimate purchaser to the allowance of the credit or refund."

There was also a long motion by the petitioner to strike the motion to dismiss.

A short parenthetical observation as to these motions may not be amiss. The respondent's motion raises no real question of jurisdiction. It is an attempt to have a portion of the case heard before a hearing of the whole case. This is sometimes desirable and under the state practice is permissible, in the absence of the court's consent, only in equity. Sometimes it is economical to hear first a single issue, and sometimes the contrary is true. As to the petitioner's motion to strike the respondent's motion, it seems unnecessary. On January 7, 1938, both motions were set down for a hearing and counsel for the petitioner wished to introduce evidence pertinent to the motions. The time allotted to the hearing being insufficient for this purpose, I concluded, as a discretionary matter, to postpone further consideration of the motions. The case was then set down for a hearing on March 1, 1938, upon

O. Walker Taylor, of Boston, Mass., for plaintiff.

Francis J. W. Ford, U. S. Atty., and Arthur L. Murray, Sp. Asst. to U. S. Atty., both of Boston, Mass., James W. Morris, Asst. Atty. Gen., and Andrew D. Sharpe and John E. Garvey, Sp. Assts. to Atty. Gen.

McLELLAN, District Judge.

This is an action at law against the United States to recover taxes assessed and

the motions and the merits. At this time counsel for the respondent urged that the motion to dismiss be heard first and determined before a hearing upon the merits of the case. I had seen enough of the controversy to be satisfied that it would save time and be fair to both parties if I took all of the evidence bearing upon the issues presented by the motions and by the petition and answer. In this connection, attention may be called to the fact that the motion to dismiss is not treated as the equivalent of a demurrer, but by its very terms is dependent upon facts set forth in an affidavit. Accordingly, I propose to state the facts as they appeared at the trial, and then the conclusions as to the motion to dismiss and as to the judgment which should be entered.

By oral stipulation, as disclosed by the stenographic record, it appears, and I find, that the petitioner paid to the collector of internal revenue a total of $67,390.34, made up of items as follows:

| | |
|---|---:|
| April 17, 1933 | $ 8,848.17 |
| April 27, 1933 | 14,923.63 |
| June 6, 1933 | 19,031.60 |
| June 6, 1933 | 10,491.42 |
| March 23, 1934 | 650.54 |
| January 3, 1934 | 106.16 |
| February 13, 1934 | 105.97 |
| January 24, 1935 | 13,232.85 |
| | $67,390.34 |

Of this amount, a total of $9,211.98 has been refunded in two items of $7,000 and $2,211.98. A balance of $58,178.36 has therefore been retained by the collector. It is this amount which, with interest, the petitioner seeks to recover in this action.

On January 30, 1935, the petitioner filed a claim for refund on Form 843 of the Treasury Department. In the ensuing copy of the claim, the underlined material represents what was added to the blank form, and the matter not underlined represents the blank before it was filled. It reads:

"Form 843
Treasury Department
Internal Revenue Service
    Revised June, 1930    Claim

"To Be Filed With The Collector. Where Assessment Was Made Or Tax Paid
"The Collector will indicate in the block below the kind of claim filed, and fill in the certificate on the reverse side.

Collector's Stamp
(Date received)

[X] Refund of Tax Illegally Collected.
[ ] Refund of Amount Paid for Stamps Unused, or Used in Error or Excess
[ ] Abatement of Tax Assessed (not applicable to estate or income taxes).

"State of Massachusetts
  County of Middlesex } ss:

Name of taxpayer or purchaser of stamps

Type or Print    Business address

University Distributing Company
c/o O. Walker Taylor, Attorney
(Street)  (City)  (State)
11 Beacon Street, Boston, Massachusetts

"The deponent, being duly sworn according to law, deposes and says that this statement is made on behalf of the taxpayer named, and that the facts given below are true and complete:

1. District in which return (if any) was filed Massachusetts
2. Period (if for income tax, make separate form for each taxable year) from June 6, 1932, to February 13, 1934
3. Character of assessment or tax Excise taxes under Section 609, Act of 1932 [26 U.S.C.A. § 1420 et seq. note].
4. Amount of assessment, $67,390.34; dates of payment See Par. No. 1 below.
5. Date stamps were purchased from the Government
6. Amount to be refunded (or such other amount legally refundable) $67,390.34
7. Amount to be abated (not applicable to income or estate taxes)
8. The time within which this claim may be legally filed expires, under Section 1106 (a) of the Revenue Act of 1932 [26 U.S.C.A. § 1433], on April 17, 1937.

"The deponent verily believes that this claim should be allowed for the following reasons:

1. The sums herein claimed for refund aggregating $67,390.34 represent taxes, interest and penalties collected from the claimant upon the manufacture of jig-saw puzzles so-called under the guise of Sec. 609 of the Revenue Act of 1932 and the dates of payment were as follows:

| April 17, 1933 | $ 8,848.17 | April 23, 1934 | $ 650.54 |
| April 27, 1933 | 14,923.63 | Jan. 3, 1934 | 106.16 |
| June 6, 1933 | 19,031.60 | Feb. 13, 1934 | 105.97 |
| June 6, 1933 | 10,491.42 | Jan. 24, 1935 | 13,232.85 |

2. The claimant contends that jig-saw puzzles are not 'sporting goods', 'games' or any other such article as contemplated by the statute but that such articles are expressly exempt from taxation under the statute since they are both in fact and in law 'toys' or 'puzzles' as the name implies, and that, therefore, the taxes, penalties and interest, indicated above, were wrongfully, illegally, and erroneously collected. Consideration of this claim at an early date is urgently requested.

(Attach letter size sheets if space is not sufficient)

Signed University Distributing Co.
By [S] David Adams
Treas.

"Sworn to and subscribed before me this 30th day of January, 1935.

[S] Timothy W. Good, Jr.,     Notary Public
(Signature of officer adminis-     (Title)
tering oath)
[Notarial Seal]

(See Instructions on Reverse Side)
2—11704"

All the foregoing appeared on the face of the claim for refund. On the back appeared some printed matter not necessary here to be stated, followed by the following printing:

"Instructions

"1. The claim must set forth in detail and under oath each ground upon which it is made, and facts sufficient to apprise the Commissioner of the exact basis thereof.

"2. The claim should be sworn to by the taxpayer, if possible. Whenever it is necessary to have the claim executed by an attorney or agent, on behalf of the taxpayer, an authenticated copy of the document specifically authorizing such agent or attorney to sign the claim on behalf of the taxpayer shall accompany the claim. The oath will be administered without charge by any collector, deputy collector, or internal revenue agent.

"3. If a return is filed by an individual and a refund claim is thereafter filed by a legal representative of the deceased, certified copies of the letters testamentary, letters of administration, or other similar evidence must be annexed to the claim, to show the authority of the executor, administrator, or other fiduciary by whom the claim is filed. If an executor, administrator, guardian, trustee, receiver, or other fiduciary files a return and thereafter refund claim is filed by the same fiduciary, documentary evidence to establish the legal authority of the fiduciary need not accompany the claim, provided a statement is made on the claim showing that the return was filed by the fiduciary and that the latter is still acting.

"4. Where the taxpayer is a corporation, the claim shall be signed with the corporate name, followed by the signature and title of the officer having authority to sign for the corporation.

"U. S. Government Printing Office:
1930 2—11704"

On February 1, 1935, Mr. Thomas B. Hassett, acting collector for the Massachusetts district, wrote the petitioner in part as follows: "Receipt is acknowledged of claim filed by you in duplicate, received in this office January 31, 1935, for alleged overpayment of excise tax under Section 609 of the Act of 1932 [26 U.S.C.A. § 1420 et seq. note], for the period from June 6, 1932 to February 13, 1934, in the amount of $67,390.34."

On August 26, 1935, the Commissioner of Internal Revenue, by D. S. Bliss, Deputy Commissioner, rejected the petitioner's claim for refund in a letter reading as follows:

"Reference is made to your claim for the refund of $67,390.34, representing tax paid under the provisions of section 609 of the Revenue Act of 1932 [26 U.S.C.A. § 1420 et seq. note] on the sale of jig-saw puzzles for the period June 1932 to February 1934, inclusive.

"The claim is based upon the contention that jig-saw puzzles are not 'sporting goods' and 'games' or any other such article as contemplated by section 609, and that the puzzles are expressly exempt from the tax since they are in fact and in law 'toys' or 'puzzles.'

"This office has ruled that jig-saw puzzles containing more than 50 pieces are sub-

ject to the tax imposed on games under the provisions of section 609. Evidence submitted in connection with previous claims filed with this office discloses that your puzzles contained more than 50 pieces.

"In view of the foregoing your claim is rejected in full."

Thus it appears that the petitioner filed a timely claim for refund which was rejected upon the specific ground that a jigsaw puzzle is a game.

The main question for determination is whether, under all the circumstances, the action falls because the petitioner failed to send with its claim for refund a sworn statement that the tax had not been passed on to the sole purchaser of the petitioner's product. It may be well here to set forth the legal requirements before stating the facts pertinent to this question. The applicable statutes and regulations follow:

Revenue Act of 1932, § 1103, 47 Stat. 286, 26 U.S.C.A. §§ 1672–1673:

"*Limitations on Suits by Taxpayers.* (a) Section 3226 of the Revised Statutes, as amended, is amended to read as follows:

" 'Sec. 3226. No suit or proceeding shall be maintained in any court for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected until a claim for refund or credit has been duly filed with the Commissioner of Internal Revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof.' "

Revenue Act of 1932, § 621, 26 U.S.C. A. § 1420 et seq. note:

"*Credits and Refunds.* * * * (d) No overpayment of tax under this title shall be credited or refunded (otherwise than under subsection (a), in pursuance of a court decision or otherwise, unless the person who paid the tax establishes, in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, (1) that he has not included the tax in the price of the article with respect to which it was imposed, or collected the amount of tax from the vendee, or (2) that he has repaid the amount of

the tax to the ultimate purchaser of the article, or unless he files with the Commissioner written consent of such ultimate purchaser to the allowance of the credit or refund."

Article 71 of Treasury Regulations 46, which refers to section 621(d) of the Revenue Act of 1932:

"*Credits and refunds.*— * * *

"If any person overpays the tax due with one monthly return, he may file a claim for refund on Form 843 or take credit for the overpayment against the tax due with any subsequent monthly return. In all cases (except those referred to in section 621(a), discussed under the preceding paragraphs of this article) where a person overpays tax, no credit or refund shall be allowed, whether in pursuance of a court decision or otherwise, unless the taxpayer files a sworn statement explaining satisfactorily the reason for claiming the credit or refund and establishing (1) that he has not included the tax in the price of the article with respect to which it was imposed, or collected the amount of tax from the vendee, or (2) that he has either repaid the amount of the tax to the ultimate purchaser of the article, or has secured the written consent of such ultimate purchaser to the allowance of the credit or refund. In the latter case the written consent of the ultimate purchaser must accompany the sworn statement filed with the credit or refund claim. The statement supporting the credit or refund claim must also show whether any previous claim for credit or refund covering the amount involved, or any part thereof, has been filed with the Collector or Commissioner."

To revert to a statement of the facts. The claim for refund is a "sworn statement explaining satisfactorily the reason for claiming the * * * refund." But the question as to which the facts are about to be stated is whether the requirement that the taxpayer file "a sworn statement explaining satisfactorily the reason for claiming the credit or refund" and "establishing (1) that he has not included the tax in the price of the article with respect of which it was imposed, or collected the amount of the tax from the vendee," has been complied with or waived.

When, on January 30, 1935, the claim for refund was filed, the Commissioner knew, or had the means of knowing, that

the petitioner had not included the tax in the sale price of the article or collected the amount of the tax from the vendee. I do not pause to state all the evidence on which this finding is based, but refer merely to a single exhibit upon which, in connection with the other evidence, I base the foregoing finding as to the Commissioner's knowledge or means of knowledge. On April 28, 1934, the internal revenue agent in Boston sent a communication to the petitioner reading in part as follows: "The recommendations which this office proposes to make with respect to your income tax liability as the result of a recent examination by an Internal Revenue Agent are shown in the statement attached."

The statement attached reads in part as follows:

. "General Information

"The Corporation was organized under the laws of Mass., October 1932, for the purpose of manufacturing Jig-saw Puzzles. The total capital stock was $5,000.00.

"The business in which the taxpayer was engaged in (sic) grew overnight and the production of puzzles for the first few months of operations ran into millions. This soon died out and as a result the business gradually became obsolete. The taxpayer had a contract to sell all the puzzles made to the S. and M. News Service for distribution. In selling the puzzles the taxpayer did not consider the manufacturers sales excise tax, as this production was not considered taxable as a 'game,' and therefore the taxpayer did not add the ten per cent to the selling price of the puzzles. The collector's office, however, ruled that this production was a 'game' and levied a ten per cent tax on all the cash that was received. The taxpayer at the present time has paid approximately $55,000.00 in Manufacturers Sales Excise Taxes and have (sic) filed a protest and claim to recover this amount of taxes, on the assumption that the production of puzzles was not a 'game'. This claim was filed against the 'Collector's Office'. The claim and protest is still pending."

The contract with the S-M News Company, Incorporated. above mentioned, was made on November 16, 1932. At this time the parties to the contract had no thought of passing on any tax to the distributor, the S-M News Company, Incorporated. As stated in White, Collector v. Aronson, 302 U.S. 16, at page 19, 58 S.Ct. 95, 97, 82 L.Ed. ——:

"A jigsaw puzzle was never taxed under Section 900(5) of the Revenue Act of 1918. It was not taxed until after the passage of section 609 of the Revenue Act of 1932, when the government attempted to tax it as a game. The act of 1932 became effective June 6, 1932. On August 26, 1932, the Commissioner issued a ruling stating that jigsaw or die cut picture puzzles were not taxable. On November 14, 1932, he issued a ruling that they were taxable."

But the petitioner first learned of this ruling of November 14, 1932, some weeks after its date. It was on April 4, 1933, that the Commissioner notified the petitioner that jigsaw or cardboard die cut picture puzzles containing more than 50 pieces were considered games and "subject to the tax as imposed by Section 609 of the Revenue Act of 1932." The terms of the petitioner's contract with its sole ' distributor were not changed in consequence of this ruling, and the tax here involved was not included in the price of the article sold or collected from the vendee.

The petitioner introduced in evidence as Exhibit 9 a paper entitled "Petition for Adjustment of Claim," which was filed with the Commissioner of Internal Revenue about February 16, 1938. I do not regard this paper as presenting a necessary ground of decision, and so do not pass upon its effect. Inasmuch, however, as it, may be regarded as important, I incorporate it in this statement of facts by reference.

Conclusions.

The following paragraphs are intended as conclusions of fact where susceptible to such a construction. They are, however, in the main, conclusions of law upon the facts here found, in accordance with the statute.

■ 1. The taxes, amounting to $58,178.36, were illegally assessed and collected, because, as decided in White, Collector v. Aronson, supra, jigsaw puzzles of the type here involved do not constitute games, as that term is used in section 609 of the Revenue Act of 1932, 26 U.S.C.A. § 1420 et seq. note.

■ 2. The taxes not having been included in the price of the articles sold or collected from the vendee, the petitioner had the right to recover their amount if he complied with the provisions pertaining to the recovery of taxes illegally collected.

3. Aside from the regulations hereafter mentioned, the petitioner's claim for refund conformed to the statutory requirements with reference to such claims.

■ 4. It is unnecessary to decide whether the Commissioner's knowledge or adequate means of knowledge that the tax had not been passed on to or paid by the purchaser, where the means of knowledge was as here acquired from the taxpayer, is tantamount to a compliance with the regulations. All that is decided is that where such means of knowledge so acquired is present and the Commissioner, passing upon an otherwise adequate claim for refund, rejects it upon the untenable ground that jigsaw puzzles constitute games, the taxpayer will not be denied recovery for failure to furnish with his claim for refund the sworn statement to which the regulations refer.

■ To the effect that compliance with a regulation, as opposed to a statute, may be waived in open court, see Tucker v. Alexander, Collector, 275 U.S. 228, 48 S.Ct. 45, 46, 72 L.Ed. 253, where Mr. Justice Stone, speaking for a unanimous court, said:

"Literal compliance with statutory requirements that a claim or appeal be filed with the Commissioner before suit is brought for a tax refund may be insisted upon by the defendant, whether the collector or the United States. Kings County Savings Institution v. Blair, 116 U.S. 200, 6 S.Ct. 353, 29 L.Ed. 657; Maryland Casualty Co. v. United States, 251 U.S. 342, 353, 354, 40 S.Ct. 155, 64 L.Ed. 297; Nichols v. United States, 7 Wall. 122, 130, 19 L.Ed. 125. But no case appears to have held that such objections as that urged here may not be dispensed with by stipulation in open court on the trial. The statute and the regulations must be read in the light of their purpose. They are devised, not as traps for the unwary, but for the convenience of government officials in passing upon claims for refund and in preparing for trial. Failure to observe them does not necessarily preclude recovery. If compliance is insisted upon, dismissal of the suit may be followed by a new claim for refund and another suit within the period of limitations. If the Commissioner is not deceived or misled by the failure to describe accurately the claim, as obviously he was not here, it may be more convenient for the government and decidedly in the interest of an orderly administrative procedure that the claim should be disposed of upon its merits on a first trial without imposing upon government and taxpayer the necessity of further legal proceedings. We can perceive no valid reason why the requirements of the regulations may not be waived for that purpose. We are not unmindful of those cases holding that in suits against the government no officer of the government may waive statutes of limitations. Finn v. United States, 123 U.S. 227, 8 S.Ct. 82, 31 L.Ed. 128. Such waivers if allowed would defeat the only purpose of the statute and impose a liability upon the United States which otherwise would not exist—consequences which do not attach to the waiver here."

The Tucker Case deals with a waiver in open court, but there is no real reason why a regulation may not be waived, as well, before trial.

In United States v. Memphis Cotton Oil Company, 288 U.S. 62, 53 S.Ct. 278, 77 L. Ed. 619, the taxpayer filed a claim for refund which failed to state the ground on which the refund was demanded. It was held that it could be amended at any time before the claim in its original form had been rejected, though after the time when a wholly new claim would be barred by limitation. As in the Tucker Case, supra, the court drew the distinction between the refund statute and the Commissioner's regulations pursuant thereto. The court found it unnecessary to decide whether under the circumstances there was a waiver of defects of form which would call for the return of the overpayments though no amendment had been offered.

In United States v. Garbutt Oil Company, 58 S.Ct. 320, 323, 82 L.Ed. ——, decided by the Supreme Court January 3, 1938, on which the respondent relies, I find nothing favorable to the view for which the respondent contends. Again the distinction between statute and regulation appears, and Mr. Justice Roberts says: "The argument confuses the power of the Commissioner to disregard a statutory mandate with his undoubted power to waive the requirements of

the Treasury regulations." And see United States v. Andrews, 58 S.Ct. 315, 82 L.Ed.—, also decided January 3, 1938.

In the case at bar, the petitioner not only filed seasonably a claim for refund, but the claim was not defective even in form. The petitioner merely failed to file a sworn statement with its sworn claim for refund. This defect, if such it was, could be waived. The rejection of the claim on the merits, on the erroneous ground that a puzzle is a game, when the Commissioner knew, or had the means of knowledge, that the tax had not been paid by the petitioner's only customer, constitutes at least substantial evidence of such waiver, and it is unnecessary to decide whether waiver as a matter of law is here apparent. It is found as a fact, upon the basis of the facts heretofore stated, that there was such a waiver.

5. In view of the foregoing conclusions, no attempt is made to pass upon the effect of the paper entitled "Petition for Adjustment of Claim" (Exhibit 9) filed with the Commissioner of Internal Revenue about February 16, 1938.

6. The respondent's motion to dismiss the action for want of jurisdiction is denied, and, in view of its denial, I see no occasion for passing upon the petitioner's unnecessary motion to dismiss the motion to dismiss.

7. The respondent's motion for judgment is denied, and judgment is to be entered for the petitioner in the sum of $58,178.36 and interest according to law. If, as to interest, any dispute arises and further evidence is needed, it will be received.

Note: At today's continued hearing of the case, I denied the respondent's motion to dismiss and the respondent's motion for judgment, subject in each instance to the respondent's exception. A finding for the petitioner was also announced, and the respondent excepted thereto. I stated that it seemed unnecessary to pass upon the petitioner's eight requests for rulings and that to the extent they are granted by virtue of this opinion the respondent might have an exception thereto, and that to the extent the requests are not herein granted in substance and the petitioner is prejudiced, the latter's exception might be noted.