## B. F. GOODRICH CO. v. UNITED STATES.

### No. 8138–M.

District Court, S. D. California., C. D.

Dec. 31, 1940.

Newlin & Ashburn and William J. Currer, Jr., all of Los Angeles, Cal., for plaintiff.

William Fleet Palmer, U. S. Atty., and Armond Monroe Jewell, Asst. U. S. Atty., both of Los Angeles, Cal., for defendant.

McCORMICK, District Judge.

This is an action by the plaintiff corporation, as sole owner of the stock of, and as assignee of Pacific Goodrich Rubber Company, a corporation, to recover the sum of $16,450.39, with interest. The demand is based upon claims for refund of taxes paid by Pacific Goodrich Rubber Company under protest, and alleged by the plaintiff to have been erroneously computed and assessed by the Commissioner of Internal Revenue under Section 602 of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Code § 3400.

The record shows the following factual situation:

During the period from August 1, 1933, through September 30, 1933, the taxpayer, Pacific Goodrich Rubber Company, manufactured and sold tires which contained approximately 705,806 pounds of cotton fabric in various states of manufacture, upon which it had paid to the Collector of Internal Revenue, a so-called "floor tax" levied by Section 16 of the Agricultural Adjustment Act, 48 Stat. 31, 7 U.S.C.A. § 616, at the rate of .044184 per pound. In computing the excise taxes imposed by Section 602 of the Revenue Act of 1932 upon tires manufactured and sold after August 1, 1933, taxpayer took a deduction from such excise tax as provided in Section 9 of the Agricultural Adjustment Act, supra, 7 U.S.C.A. § 609; in other words, the taxpayer arrived at the excise tax due under the 1932 Act by deducting from the weight of the tires manufactured and sold after August 1, 1933, the weight of the processed cotton in such tires, upon which a so-called "floor tax" had been paid under Section 16, supra. This claimed credit or deduction was disallowed by the Bureau of Internal Revenue, and the tax authorities of the United States thereupon demanded additional manufacturer's tax under Revenue Act of 1932, and the taxpayer, Pacific Goodrich Rubber Company, in order to avoid penalties and interest, paid under protest the additional manufacturer's tax and interest in the sum of $16,450.39. This action followed claims, both by the taxpayer and by the plaintiff, for the refund of said sum of money, with interest, which have been rejected by the Government.

The position of the United States is substantially that, despite the fact that the taxpayer had paid the tax on the cotton in the tires under provisions of the Agricultural Adjustment Act, it was not entitled to refund of the $16,450.39.

The aforesaid section of the Revenue Act of 1932 imposed a tax upon tires, wholly or in part of rubber, of 2¼¢ a pound on total weight of sales by manufacturers.

Section 9(a), supra, provided that "upon any article upon which a manufacturers' sales tax is levied under the authority of the Revenue Act of 1932 [chapter 20 of Title 26], and which manufacturers' sales tax is computed on the basis of weight, such manufacturers' sales tax shall be computed on the basis of the weight of said finished article less the weight of the processed cotton contained therein on which a processing tax has been paid."

Section 16, supra, titled "floor stocks" imposes a tax equal in amount to the processing tax imposed by other parts of Title I of the Agricultural Adjustment Act, 7 U.S.C.A. § 601 et seq.

The primary question for decision under the stipulation of facts filed herein, and the further record evidence received at the hearing in court on February 10, 1940, is whether plaintiff's predecessor and assignor, a tire manufacturer, was entitled in the computation of its sales tax on tires under the Revenue Act of 1932, to deduct from the weight of the taxed tires the weight of the taxed cotton therein upon which it had paid the tax specified in Sec-

456

tion 16 of Title I of the Agricultural Adjustment Act.

Secondly, if under the facts of this case, such deduction or credit is proper and allowable to the taxpayer company under the Revenue Act of 1932 is the plaintiff in this action, who was not actually the taxpayer, entitled under the record to require a refund to it of such overpayment?

Plaintiff contends that the tax credit or refund sued for in this action is neither a "floor stock tax" nor a "processing tax," but, rather, an "additional manufacturer's excise tax;" but assuming that such is the case, and on demurrer we substantially held that it was, yet, in order for the plaintiff to recover in this action it must show that Section 9 of the Triple A Act authorizes the credit demanded.

If the section is read and considered literally, its provisions are restricted to paid "processing taxes" as such are expressly defined in the Agricultural Adjustment Act. It is undeniable that the so-called "floor stock" tax provided for in the Agricultural Adjustment Act is not within the literal terms of Section 9. Indeed, the tax levied under Section 16 is not defined in the Act; but the established rule that where the words of a statute are clear there is no room for construction, is not to be applied where the literal meaning produces an unreasonable result—one that is "plainly at variance with the policy of the legislation as a whole." United States v. American Trucking Ass'n, 310. U.S. 534, 60 S.Ct. 1059, 1064, 84 L.Ed. 1345.

In my opinion, an examination of Title I of the Agricultural Adjustment Act with the aid and in the light of the correlative legislative history and material which led up to this remedial law, clearly shows the error and injustice of the contention that the deduction computation provided in Section 9 is inapplicable to the unnamed tax imposed by Section 16, or that deductions under Section 9 should be confined to specifically defined "processing" taxes according to the letter of the law. To so restrict the application of Section 9(a) would utterly destroy the chief factor present in the legislative mind in making omnibus provisions to prevent tax discrimination between tire manufacturers without any real differentiation of business activity in or use of fabricated commodities. See United States v. Dickerson, 310 U.S. 554, 60 S.Ct. 1034, 84 L.Ed. 1356.

The intent and purpose of Congress must be ascertained as of the time of enacting the Agricultural Adjustment Act and not by looking backward and taking into consideration the untoward consequences that ensued from the decision of the Supreme Court in United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914.

To construe the refund or credit provisions of the Triple A so as to include the so-called "floor stock" taxes as well as the statutorily defined "processing" taxes instead of adding "something entirely new to the meaning of the word 'processing', as it is used" in the statutes, as argued by the Government, merely sheds light upon what appears from reading the whole of Title I to have been the painstaking purpose of Congress—namely, the prevention of discrimination and double taxation.

We have been unable to find from an analysis of the applicable tax statutes any reason why the Congress should desire to relieve the manufacturers of the burden of double taxation where one tax is a processing tax and the other is a sales tax and not to relieve the same manufacturers of double taxation when one of the taxes is a so-called "floor stock tax" and the other is a sales tax; therefore, the danger of going beyond the literal interpretation of a taxing statute, adverted to in United States v. American Trucking Ass'n, supra, is not present in the consideration of the tax legislation pertinent to this action.

The Government substantially contends that the decision of the United States Supreme Court in United States v. Butler, supra, declaring certain portions of the Agricultural Adjustment Act to have been unconstitutional, operates to nullify all refund rights of taxpayers which arise by virtue of any feature of the taxing scheme invalidated. We are not impressed with this claim—it fails to evaluate the effect of Section 14 of Title I of the Act, 7 U. S.C.A. § 614, which is as follows: "If any provision of this title [chapter] is declared unconstitutional, or the applicability thereof to any person, circumstance, or commodity is held invalid the validity of the remainder of this title [chapter] and the applicability thereof to other persons, circumstances, or commodities shall not be affected thereby."

Moreover, while the claim which is the basis of this action has relation to the levy

of the so-called "floor stock" taxes provided for in Title I of the Triple A, the refund which is here sought is for an erroneously paid "manufacturer's excise tax" assessed and collected under the aforesaid effective section of the Revenue Act of 1932.

We also incline very strongly to the conclusion that, apart from the right of the taxpayer to a refund of the wrongfully demanded and collected excess taxes under the applicable revenue laws, the record before us entitles the taxpayer to the refund under the equitable remedy of money had and received. See Bull, Executor, v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421; Anniston Mfg. Co. v. Davis, 301 U.S. 337, at page 350, 57 S.Ct. 816, at page 822, 81 L.Ed. 1143.

■■ In view of our conclusion that the refund sued for in this action is for an unjustly collected manufacturer's excise tax, the administrative procedure under Section 902 et seq. of the Revenue Act of 1936, 7 U.S.C.A. § 644 et seq. is unnecessary and inapplicable. In this connection the attitude and action of the governmental tax agencies throughout, as shown by the record before us, indicates that the claim in suit was considered by them as pertaining to an "additional manufacturer's tax," and we think that the United States should now in good conscience be prevented from taking a contrary stand to the prejudice of a wronged taxpayer.

The ultimate question is whether or not the plaintiff company is entitled under the record before us to the tax refund demanded in this action.

The observation of Justice Holmes, in Rock Island, etc., Railroad Co. v. United States, 254 U.S. 141, 41 S.Ct. 55, 56, 65 L. Ed. 188 that "Men must turn square corners when they deal with the Government. If it attaches even purely formal conditions to its consent to be sued those conditions must be complied with," are strikingly applicable to the right of the plaintiff corporation to require in this action payment to it of money in the United States Treasury which has been wrongfully exacted from another company as taxes.

The plaintiff by its "First Amended Petition" alleges its right to recover the erroneously computed and collected manufacturer's excise tax by reason of its sole ownership of the capital stock and assets of the taxpayer, and also because of two assignments to it dated June 30, 1934, and August 14, 1935, respectively, of all claims, rights and choses in action which the taxpayer then had or might have against all persons, firms or corporations, and particularly the tax refund claim against the United States. The only substantial difference between the two assignments appears to be that the latter was acknowledged before a notary public while the former is not so acknowledged.

It is to be noted that there is a variance between this enlarged claim in the amended petition and the claims for refund which were filed by the taxpayer and by plaintiff company with the Commissioner of Internal Revenue and rejected by him. In the latter under Form 843 the claims are based solely upon the assignments and there is no mention therein of the stock ownership of the corporation taxpayer.

■ The Supreme Court has held that literal compliance with statutory requirements that a claim or appeal be filed with the Commissioner before suit is brought for a tax refund may be insisted upon by the defendant, whether the Collector or the United States. Tucker v. Alexander, Collector, 275 U.S. 228, 48 S.Ct. 45, 72 L.Ed. 253.

■■ The variance to which we have adverted is not occasioned by failure to comply with statutory requirements but rather to the requirement of the Treasury regulations which state that claims for refund must set forth in detail each ground upon which they are made, and facts sufficient to apprise the Commissioner of the exact basis thereof. Such a requirement may be waived. Tucker v. Alexander, supra; University Distributing Co. v. United States, D.C., 22 F.Supp. 794; Con-Rod Exchange, Inc. v. Henricksen, etc., D.C., 27 F.Supp. 427. The Commissioner, as shown by Exhibit "H" in evidence, appears to have rejected all claims for refund upon the broad ground that no right to refund existed in the taxpayer or the plaintiff under the Commissioner's interpretation of Section 9(a) of the Agricultural Adjustment Act, and the failure of the United States to insist at any time upon the literal compliance with the regulations is tantamount to a waiver in that regard.

■ It is settled law that except as to assignments by operation of law all transfers and assignments made upon any claims

upon the United States shall be absolutely null and void unless executed with certain specified formalities after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof. Section 203, Title 31, U.S.C.A. Seaboard Air Line Railway v. United States, 256 U.S. 655, 41 S.Ct. 611, 65 L.Ed. 1149; Kingan & Co. v. United States, Ct. Cl., 44 F.2d 447.

■ The position taken by the plaintiff throughout the prosecution of the claim to tax refund demanded by this action has been until the filing of First Amended Petition herein on February 5, 1940, that its cause of action and right to recover is based upon the two assignments—only at such late day did the plaintiff assert its right to the refund as sole stockholder of Pacific Goodrich Rubber Company—or by reason of the taxpayer corporation having dissolved December 21, 1934. There does appear in the record before us an authenticated claim of the plaintiff as successor to the taxpayer company, filed with the Collector July 8, 1936, and marked in evidence as Exhibit "3", for abatement of certain taxes, in which plaintiff makes the statement that it is the taxpayer by reason of the assignment of June 30, 1934, and the dissolution of the taxpaying corporation on December 21, 1934. This exhibit, we think, does not materially alter the position which has been taken by the plaintiff until the exigency of avoiding the consequence of the statute relating to assigned claims against the United States became imminent. But the chose in action did not lodge in plaintiff by its ownership of all the corporate stock of the Pacific Goodrich Rubber Company, or by the dissolution of that corporation on December 21, 1934. It vested by reason of the assignments which were executed voluntarily by the two corporations for expressed valuable considerations. The status of the plaintiff as a claimant against the United States is clearly within the inhibition of Section 203, Title 31, U.S.C.A.

The claim in suit has not been allowed, its amount has not been ascertained, and no warrant for its payment has been issued.

Section 621(d) of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Code, § 3443, provides as follows: "(d) No overpayment of tax under this chapter shall be credited or refunded (otherwise than under subsection (a) ), in pursuance of a court decision or otherwise, unless the person who paid the tax establishes, in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, (1) that he has not included the tax in the price of the article with respect to which it was imposed, or collected the amount of tax from the vendee, or (2) that he has repaid the amount of the tax to the ultimate purchaser of the article, or unless he files with the Commissioner written consent of such ultimate purchaser to the allowance of the credit or refund."

■■ This is a statutory requirement which is the yardstick or measuring rod by which we are to determine a litigant's right to sue the United States for refund or credit of an overpayment of a tire manufacturer's excise tax imposed by Section 602 of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Code § 3400, and is the statute invoked by the plaintiff in the case at bar, and in order to maintain the action the B. F. Goodrich Company, a corporation, must bring itself within the literal and strict requirements of this statute. This, we think, it has not done. The plaintiff is not the "person who paid the tax." It is a corporate entity distinct from the corporate taxpayer. The latter, during the manufacturing period upon which the credit or right to refund is claimed, conducted business and commercial operations in its own corporate name and capacity; made its own tax returns to the United States; paid under its protest, upon demand of the governmental taxing agencies, the excess tax and interest which are the subject matter of this action, and claimed the right to refund of the illegally collected manufacturer's tax sui juris. It is significant upon the question as to the "person" who paid the tax and as to plaintiff's right to recover it, to note that all of the money sued for was paid or "caused" to be paid by Pacific Goodrich Rubber Company, and that such payments were made partly before and partly after June 30, 1934.

■ Even the assignments relied on by the plaintiff company recite that they are made upon good and valuable considerations inuring to the Pacific Goodrich Rubber Company, and the record before this court does not disclose what items made up these considerations. There is no adequate showing before us to warrant

the application in this tax refund case of an alter ego principle of law. It is clear that for the protection of the Government and to prevent circuitous concealments of taxpayers the statutory requirement for tax refunds should be followed to the letter.

We think there is also another insuperable barrier to any refund to the plaintiff in this action under the record before us.

The burden of proving its right to refund rests throughout the action upon the plaintiff corporation and this burden is not sustained unless satisfactory evidence preponderates in plaintiff's favor, particularly that there has been no inclusion or collection by Pacific Goodrich Rubber Company of the tax in the price of the tires which have been sold by Pacific Goodrich Rubber Company. Substantially the only evidence produced upon this vital point is in the form of a stipulation entered into by Government counsel with the reservation as to its sufficiency, that the cashier and auditor of the taxpayer corporation would if called as a witness testify that he supervised, controlled and kept the books and records of the Pacific Goodrich Rubber Company at all times pertinent to this action and that he is familiar with and knows the prices at which tires were sold by the taxpayer at all applicable times; that he knows that during the period from August 1, 1933, to January 5, 1934, the taxpayer did not include or intend to include in the price of tires sold during such period any amount to cover any excise tax on the processed cotton contained in the tires manufactured and sold during such period; that the prices at which the taxpayer sold tires during such period were no greater on tires containing processed cotton on which a tax was payable under Section 16 of the Agricultural Adjustment Act than the prices at which during such period it sold tires containing processed cotton on which a tax was payable under Section 9 of the Triple A. No books of account or sales records were produced and no explanation for their nonproduction was made at the hearing, although the Government objected to the sufficiency of the proof that was offered on this crucial factual issue. We are not satisfied that the required burden of the nonpassage of the tax to vendees of the taxpayer has been sustained. Judgment is ordered for the defendant. Exceptions to each party on adverse rulings.