**MOORE, Collector of Internal Revenue, v. GOODYEAR TIRE & RUBBER CO.**

No. 9545.

Circuit Court of Appeals, Sixth Circuit.

Jan. 24, 1944.

On Petition for Rehearing April 3, 1944.

Fred E. Youngman, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key,

---

[6] See Federal Power Commission v. Natural Gas Pipeline Co., 315 U.S. 575, 586, 62 S. Ct. 736, 86 L.Ed. 1037.

<br>

Samuel H. Levy, and F. E. Youngman, all of Washington, D. C., and Don C. Miller and F. B. Kavanagh, both of Cleveland, Ohio, on the brief), for appellant.

W. H. Bemis, of Cleveland, Ohio (Paul Patterson and W. H. Bemis, both of Cleveland, Ohio, L. W. Baker, of Akron, Ohio, and Baker, Hostetler & Patterson, of Cleveland, Ohio, on the brief), for appellee.

Before ALLEN, HAMILTON, and Mc-ALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

On August 1, 1933, appellee taxpayer had on hand certain automobile tires, which had been manufactured from cotton and other materials. It paid on the cotton a tax provided for by § 16 of the Agricultural Adjustment Act.[1] Another tax on cotton included in manufactured tires, known as the manufacturers' excise tax, was provided for by the Revenue Act of 1932.[2] In filing its excise tax return under the 1932 Act, the taxpayer made a deduction of the amount of cotton sought to be taxed thereunder, contending that such deduction in the excise tax return was authorized under a proviso of § 9(a) of the Agricultural Adjustment Act,[3] and that, therefore, inasmuch as it had paid the processing tax, it was not liable for the excise tax. The Commissioner refused to allow the deduction and the taxpayer, accordingly, paid both the processing tax and the excise tax, the latter payment being made under protest. Suit was then filed in the district court to recover the excise tax payment and a judgment therefor was entered in favor of the taxpayer.

[1] Section 16 of the Agricultural Adjustment Act of 1933, 7 U.S.C.A. § 616, provides:

"(a) Upon the sale or other disposition of any article processed wholly or in chief value from any commodity with respect to which a processing tax is to be levied, that on the date the tax first takes effect or wholly terminates with respect to the commodity, is held for sale or other disposition (including articles in transit) by any person, there shall be made a tax adjustment as follows:

"(1) Whenever the processing tax first takes effect, there shall be levied, assessed, and collected a tax to be paid by such person equivalent to the amount of the processing tax which would be payable with respect to the commodity from which processed if the processing had occurred on such date."

[2] Section 602 of the Revenue Act of 1932, c. 209, 47 Stat. 169, 26 U.S.C.A. Int.Rev.Code, § 3400, provides:

"There is hereby imposed upon the following articles sold by the manufacturer, producer, or importer, a tax at the following rates:

"(1) Tires wholly or in part of rubber, 2¼ cents a pound on total weight (exclusive of metal rims or rim bases), to be determined under regulations prescribed by the Commissioner with the approval of the Secretary."

[3] Section 9(a) of the Agricultural Adjustment Act of 1933, c. 25, 48 Stat. 31, 7 U.S.C.A. § 609(a), provides:

"To obtain revenue for extraordinary expenses incurred by reason of the national economic emergency, there shall be levied processing taxes as hereinafter provided. When the Secretary of Agriculture determines that rental or benefit payments are to be made with respect to any basic agricultural commodity, he shall proclaim such determination, and a processing tax shall be in effect with respect to such commodity from the beginning of the marketing year therefor next following the date of such proclamation. The processing tax shall be levied, assessed, and collected upon the first domestic processing of the commodity, whether of domestic production or imported, and shall be paid by the processor. The rate of tax shall conform to the requirements of subsection (b). Such rate shall be determined by the Secretary of Agriculture as of the date the tax first takes effect, and the rate so determined shall, at such intervals as the Secretary finds necessary to effectuate the declared policy, be adjusted by him to conform to such requirements. The processing tax shall terminate at the end of the marketing year current at the time the Secretary proclaims that rental or benefit payments are to be discontinued with respect to such commodity. The marketing year for each commodity shall be ascertained and prescribed by regulations of the Secretary of Agriculture: Provided, That upon any article upon which a manufacturers' sales tax is levied under the authority of the Revenue Act of 1932 and which manufacturers' sales tax is computed on the basis of weight, such manufacturers' sales tax shall be computed on the basis of the weight of said finished article less the weight of the processed cotton contained therein on which a processing tax has been paid."

The question before the court on appeal is whether, under § 16 of the Agricultural Adjustment Act, appellee was entitled to deduction of the excise tax by virtue of a proviso granting such a deduction under § 9(a).

Under the Agricultural Adjustment Act, the processing tax was effective according to proclamation by the Secretary of Agriculture. Section 9(a) of the Act, together with the above-mentioned proclamation (which was thereafter made), provided that a processing tax on cotton of 4.4184 cents a pound on the first domestic processing thereof, was effective August 1, 1933. At the same time, it was provided that the cotton so taxed should not be subject to a further tax under the manufacturers' excise tax law. Therefore, if the cotton in question had been processed on or after August 1, 1933, the taxpayer so subjected to payment of the processing tax, would not be subject to the additional payment of the manufacturers' excise tax.

The Government rests its right to payment of the excise tax on the ground that the tax levied in this case was provided for by § 16 of the Agricultural Adjustment Act; that such tax was not a processing tax, inasmuch as the cotton in question had already been processed in tires before the effective date of the processing tax, but only a tax "equivalent" to the processing tax; that the proviso in § 9(a) of the Agricultural Adjustment Act, exempting from excise tax, processors liable for the processing tax, was inapplicable to one who had processed cotton prior to the effective date of such tax; and that under § 16, persons who had processed cotton before August 1, 1933, were subject to a tax equivalent to the processing tax and, there being no proviso in such section [similar to that in § 9(a)], exempting such persons from payment of the excise tax, they were liable for both the excise tax and the agricultural adjustment tax on commodities processed before the processing tax became effective. The contention of the Government, therefore, is that one who processed cotton in tires after August 1, 1933, is liable only for the processing tax, and absolved from payment of excise tax; while one who processed cotton before that date, is liable for a tax, equivalent to the processing tax, and also for the excise tax provided for by the Revenue Act of 1932.

Section 9(a) applies to processing taxes. Section 16 applies to a tax which is not defined as a processing tax (nor is it named in any way), but, in amount, is provided as a tax, equivalent to the processing tax mentioned in § 9(a). Because Congress sought to tax cotton which had been processed before · the processing tax became effective, it was provided in § 16 that, in such cases, "there shall be made a tax adjustment * * * whenever the processing tax first takes effect," and that there should be levied a tax "equivalent to the amount of the processing tax which would be payable with respect to the commodity from which processed if the processing had occurred on such date."

The tax in question was a substitute for the processing tax in the given situation. It was the same in amount. It was expressly referred to as a tax adjustment on previously processed cotton. It arose from the imposition of the processing tax, and was plainly for the purpose of subjecting cotton processed before the processing tax became effective, to the same taxation, as cotton processed thereafter.

If the tax provided for by § 16 could not be technically described as a processing tax, it was, in any event, a tax on processing that had occurred before the processing tax took effect. To sustain the Government's contention, it would be necessary to hold that Congress intended to subject cotton to two taxes if processed before the processing tax became effective, and to only one if processed thereafter; and to discriminate between processors of the same commodity and subject certain of them to a palpably unjust tax, without any real differentiation of business activity in the use of the fabricated commodity, and without any disclosed or inferable purpose or intent on the part of Congress to do so. All presumptions are against such a construction, and tax laws will not be given an effect of this kind unless the legislative branch has unmistakably so enacted. State of Tennessee v. Whitworth, 117 U.S. 129, 6 S.Ct. 645, 29 L.Ed. 830. Moreover, the legislative history, in some degree, discloses an intention and understanding in enacting the provisions of the statute here under discussion, that commodities processed before and after the effective date of the processing tax, should be liable to payment of the same tax. Senate Hearings on H.R. 3835 before the Senate Committee on Agriculture, p. 64.

■ While the tax, levied in accordance with § 16, is not literally a processing tax, it was provided to attain the same object as the processing tax; it was equivalent in amount and, professedly, it was for the purpose of taxing a commodity processed before the effective date of the processing tax in exactly the same way that a commodity, thereafter processed, was taxed by the processing tax. The attempted, technical interpretation, and the differentiation between the narrow, literal meaning of a processing tax, and a tax equivalent to the processing tax—in variance with the policy of the legislation as a whole—must yield to a construction obviously consonant with the purposes of the Act.

■ Accordingly, we are of the opinion that a tax levied under § 16 on commodities processed before the effective date of the processing tax, entitled the taxpayer to exemption from the excise tax in accordance with the proviso of § 9(a), to the same extent that a taxpayer received a like exemption under the same proviso, on commodities processed after the tax became effective.

■ Appellee paid the agricultural adjustment tax provided for by § 16; and all rights to its refund, which might otherwise arise out of the subsequent adjudication of invalidity of the Act by the Supreme Court, have been waived. However, the Government claims that, because the Agricultural Adjustment Act was held unconstitutional, appellee thereby lost all rights to refund of the manufacturers' excise tax, which it had paid under protest. Such argument is based upon the ground that the exemption from the excise tax, upon which appellee bases its claim for refund, was contained in a proviso of the invalidated Act and, therefore, appellee has no right to maintain a claim founded upon a void statute. This contention is without merit because of controlling equitable principles which entitle a taxpayer to refund in such a case. Davies' Estate v. Commissioner, 6 Cir., 126 F.2d 294; B. F. Goodrich Co. v. United States, D.C.Cal., 48 F. Supp. 453.

The judgment of the district court is affirmed.

### On Petition for Rehearing.

Petition for rehearing having been filed on behalf of appellant, on the ground that, subsequent to the filing of the opinion in the above cause, on January 24, 1944, the Supreme Court, on January 31, 1944, decided the same issues involved, contrary to the contentions of appellee herein, in the case of B. F. Goodrich Co. v. United States, 64 S.Ct. 471; and it further appearing that appellee desires to submit no answer to the petition for rehearing, nor additional argument orally, or by brief in the event said petition is granted; and the court being of the opinion that the above-mentioned decision of the Supreme Court is here applicable and controlling, now, therefore,

It is hereby ordered that the petition for rehearing be and is hereby granted; that the judgment of the district court be and is hereby reversed; and that the case is remanded for entry of judgment in accordance with this order.