## TENNESSEE v. WHITWORTH.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE MIDDLE DISTRICT OF TENNESSEE.

Argued January 22, 1886.—Decided March 1, 1886.

A State statute incorporating a railroad company, which provides that the capital stock of the company shall be forever exempt from taxation and that the road with all its fixtures and appurtenances shall be exempt from taxation for the period of twenty years and no longer, exempts the road its fixtures and appurtenances from taxation only for the term named in the act; but forever exempts shares in the capital stock of the company, in the hands of the various holders, from taxation in the State.

When two railroad corporations, whose shares are by a State statute exempt from taxation in the State, consolidate themselves into a new company under a State law which makes no provision to the contrary, and issue shares in the new company in exchange for shares in the old company, the right of exemption from taxation in the State passes into the new shares, and into each of them.

This was a suit in mandamus brought by the State of Tennessee, in the Circuit Court of Davidson County, against

George K. Whitworth, the trustee and tax collector of that county, to require him to assess for taxation the shares of stock in the Nashville, Chattanooga and St. Louis Railroad Company. After the suit had been begun in the State court it was removed by Whitworth to the Circuit Court of the United States for the Middle District of Tennessee, under the act of March 3, 1875, ch. 137, 18 Stat. 470, on the ground that the suit was one arising under the Constitution of the United States.

The case was as follows: The Nashville and Chattanooga Railroad Company, now, by consolidation with the Nashville and Northwestern Railroad Company and a change of name, the Nashville Chattanooga and St. Louis Railroad Company, was incorporated by the Legislature of Tennessee, December 11, 1845, to build and operate a railroad. Section 38 of its charter was in these words:

"SEC. 38. The capital stock of said company shall be forever exempt from taxation, and the road with all its fixtures and appurtenances, including workshops, warehouses, and vehicles of transportation, shall be exempt from taxation for the period of twenty years from the completion of the road, and no longer."

The act incorporating the Nashville and Northwestern Railroad Company contained a provision identical with this.

The question was whether this provision had the effect of a contract by the State for the exemption from taxation in Tennessee of the shares of the capital stock of the corporation. The capital stock was by the charter divided into shares of $25 each, to be subscribed for on books opened for that purpose. It was also provided that, as soon as the requisite number of shares had been subscribed, "the Nashville and Chattanooga Railroad Company shall be regarded as formed," and "the said subscribers to the stock shall form a body politic and corporate in deed and in law by the name and for the purpose" specified. Fifty cents on each share was to be paid in money at the time of subscribing.

Sections Nine, Twelve, Fifteen, Sixteen, and Seventeen were as follows:

" Sec. 9. As soon as the number of forty thousand shares shall have been subscribed, it shall be the duty of the commissioners appointed to declare the same, to appoint a time for the stockholders to meet in Nashville, and give notice thereof by publication in some of the newspapers of Nashville, at which time and place the said stockholders, in person or by proxy, shall proceed to elect the directors of the company, and to enact all such regulations, rules, and by-laws as may be necessary for the government of the corporation and the transaction of its business. The persons elected directors at this meeting shall serve for such period, not exceeding one year, as the stockholders may direct; and at this meeting the stockholders shall fix on the day and place or places where the subsequent elections of directors shall be held; and such elections shall, thenceforth be annually made. But if the day of annual election should pass without any election of directors, the corporation shall not be thereby dissolved, but it shall be lawful on any other day to hold and make such election ir such manner as may be prescribed by a by-law of the corporation."

" Sec. 12. The board of directors shall not exceed, in their contracts, the amount of the capital of the corporation, and of the funds which the company may have borrowed and placed at the disposal of the board; and in case they should do so, the president and directors who may be present at the meeting at which such contract or contracts so exceeding the amount aforesaid shall be made, shall be jointly and severally liable for the excesses, both to the contractor or contractors and the corporation: *Provided*, that any one may discharge himself from such liability by voting against such contract or contracts, and causing such vote to be recorded on the minutes of the board, and giving notice thereof to the next general meeting of the stockholders."

" Sec. 15. The board of directors may call for the payment of twenty-four and a half dollars on each share of stock in sums not exceeding two dollars in every thirty days: *Provided*, that twenty days' notice be given of such call in at least one public newspaper of the State in which any of the stockholders may reside; and a failure to pay, or secure to be paid,

according to the rules of the company, any of the instalments so-called, as aforesaid, shall induce a forfeiture of the share or shares on which default shall be so made, and all payments thereon, and the same shall vest in and belong to the company, and may be restored to the owner or owners by the board of directors, if they deem proper, on the payment of all arrears on such shares, and legal interest thereon; or the directors may waive the forfeiture after thirty days' default, and sue the stockholders for the instalments due, at their discretion.

" SEC. 16. The stock of said company may be transferred in such manner and form as may be directed by the by-laws of the said corporation.

" SEC. 17. The said company may at any time increase its capital to a sum sufficient to complete the said road, and stock it with everything necessary to give it full operation and effect, either by opening books for new stock, or by selling such new stock, or by borrowing money on the credit of the company, and on the mortgage of its charter and works; and the manner in which the same shall be done in either case shall be prescribed by the stockholders at a general meeting; and any State, or any citizen, corporation or company of this or any other State or country, may subscribe for and hold stock in said company, with all the rights and subject to all the liabilities of any other stockholder."

On the 21st of January, 1848, but before the corporation was organized by the election of directors, the charter was amended as follows:

" SEC. 3. *Be it enacted,* That the charter of the company be further so amended that the said company be required to estimate and pay semi-annually to the several holders thereof a sum equal to six per cent. per annum on the capital stock of said company actually paid in, to be charged to the cost of construction: *Provided,* a majority of the stockholders at their first regular meeting agree thereto."

The Circuit Court was of opinion that the shares of stock were by the charter exempt from taxation, and gave judgment accordingly. To reverse that judgment this writ of error was brought.

*Mr. Samuel Watson, Mr. J. B. Heiskell* and *Mr. James M. Head* for plaintiff in error.

I. The capital stock of a corporation is a distinct thing from the shares of stock, and owned by different persons. The exemption of one does not necessarily exempt the other from taxation. *Farrington* v. *Tennessee,* 95 U. S. 679; *City of Memphis* v. *Ensley,* 6 Baxter, 553; *Nashville Gaslight Co.* v. *Nashville,* 8 Lea, 406; *Van Allen* v. *Assessors,* 3 Wall. 573; *People* v. *Commissioners,* 4 Wall. 458; *Memphis* v. *Farrington,* 8 Baxter, 539.

II. It was not the intention of the legislature, in granting this charter, that the exemption of the capital stock should embrace the shares of stock.

1. Circumstances surrounding the legislature, at the time the charter was granted, show that it had a clear appreciation of the distinction between capital stock and shares of stock: as (*a*) Act of 1836 taxing stocks—passed nine years before the act incorporating the Nashville & Chattanooga Railroad Company. (*b*) *Union Bank* v. *The State,* 9 Yerger, 490, decided in 1836, declaring distinction between capital stock and shares of stock for taxation purposes. (*c*) Act of 1844 taxing all stock of individual resident stockholders in all the incorporated companies in the State.

2. The contract of exemption was made with the railroad company, and not with the stockholders. The word "company" is used in the charter.

3. The words "capital stock" are not used in the charter as synonomous with "shares" of stock.

4. Nor is there any substantial distinction between "capital stock" and "capital" as used in the charter. *Railroad Co.* v. *Gaines,* 97 U. S. 697; *Memphis & Charleston Railroad Co.* v. *Gaines,* 3 Tenn. Ch. 604, 611 ; *Chattanooga* v. *Railroad Co.,* 7 Lea, 561.

5. Although the shares of stock and the property of the company be taxed, it yet has a valuable privilege left in the exemption of the capital stock. *Louisville & Nashville Railroad Co.* v. *State,* 8 Heiskell, 663; 795; *State Railroad Tax Cases,* 92 U. S. 603; *Farrington* v. *Tennessee,* 95 U. S. 679. The

legislature may tax capital stock, as such, separately. Such a tax would be, not a property tax, but in the nature of a privilege tax. *Delaware Railroad Tax Cases*, 18 Wall. 206. *Bank of Commerce* v. *New York City*, 2 Black, 620, 628; *People* v. *Home Insurance Co.*, 92 N. Y. 328.

6. No reliance can be placed by defendant upon contemporaneous construction, because the stock has never been taxed. Mere nonuser of the taxing power by the State does not destroy the power, or form any reason for not exercising it. *Chicago, Burlington & Quincy Railroad Co.* v. *Iowa*, 94 U. S. 155.

III. The State has the power to tax the stock of nonresident stockholders.

1. Act of February 4, 1848, taxing stock owned by nonresident stockholders; passed before any subscriptions had been made by nonresidents. (*a*) Changed by implication. Code, section 541; subsections 7, 9, 10. (*b*) Changed back to taxation of stock of nonresidents. Acts of March 7, 1869, March 25, 1873, and now the law of the State.

2. Legislature may fix the *situs* of personal property. *Green* v. *Van Buskirk*, 5 Wall. 307, and 7 Wall. 139.

3. Whatever property the State can, through its courts, seize and validly deprive the owner of his title thereto, such property it can subject to taxation. *Cooper* v. *Reynolds*, 10 Wall. 308; *Miller* v. *United States*, 11 Wall. 268.

4. Not only has the legislature the power to change or destroy the legal fiction that movables follow the person, but for purposes of taxation this fiction does not exist. *Hoyt* v. *Commissioners*, 23 N. Y. 224; *People* v. *Smith*, 88 N. Y. 576; *People* v. *Gardner*, 51 Barb. 352; *Catlin* v. *Hull*, 21 Vt. 152; *People* v. *Home Insurance Co.*, 29 Cal. 533; *Maltby* v. *Reading & Columbia Railroad Co.*, 52 Penn. St. 140; *State Tax on Foreign-held Bonds*, 15 Wall. 300; *Railroad Co.* v. *Jackson*, 7 Wall. 262; *Murray* v. *Charleston*, 96 U. S. 432; *Railroad Co.* v. *Collector*, 100 U. S. 595.

5. Stock in a corporation has an actual *situs*, the place where the corporation is located. *Ohio & Mississippi Railroad Co.* v. *Wheeler*, 1 Black, 286; *Muller* v. *Dows*, 94 U. S. 444; *Mayor*,

*etc., of Nashville* v. *Thomas,* 5 Coldwell, 600, 604; *Bedford* v. *Mayor, etc., of Nashville,* 7 Heiskell, 409, 412; *National Bank* v. *Commonwealth,* 9 Wall. 353; *Tappan* v. *Merchants' Bank,* 19 Wall. 460; *Faxon* v. *McCosh,* 12 Iowa, 527.

*Mr. Edward H. East* for defendant in error.

Mr. Chief Justice Waite delivered the opinion of the court. After stating the facts as above reported, he continued:

It is apparent from the charter that the subscribers of shares and those claiming under them were to be the holders of the stock of the corporation, and that the money paid into the treasury upon subscriptions was to be used by the corporation in building and equipping its railroad. In this way the capital of the corporation was to be converted into the railroad and its appurtenances. A tax upon the railroad, therefore, after its completion, is necessarily a tax upon the capital, because, practically, the capital and that into which it has been converted are the same. The railroad of the corporation may be worth more than its capital, but all its capital is in its railroad. Such being the case, the taxation of both railroad and capital would be, so far as the corporation is concerned, double taxation.

In *Railroad Companies* v. *Gaines,* 97 U. S. 697, it was held that a provision in the charter of the Memphis & Charleston Railroad Company, precisely like that now under consideration, did not exempt the railroad of that corporation and its appurtenances from taxation after twenty years from the time of its completion, even though the capital stock of the corporation had all been invested in the railroad, because, taking the whole section together, it was apparent such was not the intention of the legislature. The property was taxable, but the capital stock was exempt.

It is no doubt true that the legislature may make a difference, for the purposes of taxation, between the capital stock of a corporation in the hands of the corporation itself, and the shares of the same capital stock in the hands of the individual stockholders. That has often been done, and the cases are

numerous where the exemption of shares from taxation has been claimed because of a charter exemption of the capital stock. Notably this was the case with the national banks. The capital stock of such banks invested in United States securities is not taxable by the States, but shares of the stock in the hands of the individual stockholders may be taxed without deduction on account of such an investment. This has been held from the beginning. *Van Allen* v. *The Assessors*, 3 Wall. 573; *Bradley* v. *The People*, 4 Wall. 459, 462; *The People* v. *The Commissioners*, 4 Wall. 244; *Lionberger* v. *Rouse*, 9 Wall. 468. The capital stock in the hands of the bank is exempt because invested in securities which are not to be taxed, Rev. Stat. § 3701, but the shares in the hands of the stockholders are, by the very terms of the banking act, put, for the purposes of State taxation, on the same footing as other moneyed capital. Rev. Stat. § 5219. This, it was said, showed the intention of Congress to exempt the bank for what was invested in government securities, but to charge the stockholder. In *Farrington* v. *Tennessee*, 95 U. S. 679, the charter of the Union and Planters' Bank provided that "said company shall pay to the State an annual tax of one-half of one per cent. on each share of the capital stock subscribed, which shall be in lieu of all other taxes," and the question was, whether this exempted the shares in the hands of the stockholders from any further taxation by the State. The court, three Justices dissenting, held that it did, because, as the charter tax was laid on each share subscribed, the further exemption must necessarily have been of the shares in the hands of the holders, although the tax as imposed was payable by the corporation. In all cases of this kind the question is as to the intent of the legislature, the presumption always being against any surrender of the taxing power.

In corporations four elements of taxable value are sometimes found: 1, franchises; 2, capital stock in the hands of the corporation; 3, corporate property; and, 4, shares of the capital stock in the hands of the individual stockholders. Each of these is, under some circumstances, an appropriate subject of taxation; and it is no doubt ш.с 'n the power of a State, when

not restrained by constitutional limitations, to assess taxes upon them in a way to subject the corporation or the stockholders to double taxation. Double taxation is, however, never to be presumed. Justice requires that the burdens of government shall as far as is practicable be laid equally on all, and, if property is taxed once in one way, it would ordinarily be wrong to tax it again in another way, when the burden of both taxes falls on the same person. Sometimes tax laws have that effect; but if they do, it is because the legislature has unmistakably so enacted. All presumptions are against such an imposition.

This brings us to an examination of the present charter to see what the legislature has expressed its intention of doing. "The capital stock of said company" is exempt from taxation. That has been expressly enacted, and the owner or owners of the stock are necessarily relieved from all taxation on this account. The important question is, therefore, who are the owners of the capital stock of this corporation within the meaning of the term "capital stock" as used in this charter, because, in construing statutes which are binding on States as contracts, the words employed are, if possible, to be given the same meaning they had in the minds of the parties to the contract when the statute was enacted. In this respect there is no difference between a contract of a State and a contract of a natural person. If the words employed are capable of more than one meaning, that meaning is to be given them which, taking the whole statute together, it is apparent the parties intended they should have.

Returning to the charter, we find that the "capital stock" is divided into shares. These shares are to be subscribed and paid for, and the money raised in this way constitutes the "capital" of the corporation spoken of in section 12, where it is said, "the board of directors shall not exceed in their contracts the amount of the capital of the corporation," &c., and in section 17, where it is provided "that said company may at any time increase its capital to a sum sufficient to complete the said road." This capital is to be used by the corporation to build and equip its road, and if more capital is needed for

that purpose it may be raised "by opening books for new stock, or by selling such new stock." The manner of doing this may "be prescribed by the stockholders at a general meeting; and any State, or any citizen, corporation or company, . . . may subscribe for and hold stock in the said company, with all the rights and subject to all the liabilities of any other stockholder." Sec. 17. Payments of subscriptions are to be made on each share of stock, and if default is made in a payment when demanded "the share or shares on which default shall be so made and all payments thereon" are forfeited, "and the same shall vest in and belong to the company," but the board of directors may, if they deem proper, restore them to the "owner or owners," "on payment of all arrears on such shares and the legal interest thereon." Sec. 15. So, too, "The Stock of said company may be transferred in such manner and form as may be directed by the by-laws of the corporation," sec. 16; and, under the amending act of 1848, interest was to be paid semi-annually at the rate of six per cent. per annum ":to the several holders thereof . . . on the capital stock of said company actually paid."

From this it is clear to us that while the money paid in by the subscribers of the shares of the capital stock of the corporation constituted the capital of the corporation which was to be used in building and equipping the railroad, the stock created by such subscription and payment was to belong to and remain as the property of the several holders of the shares so subscribed and paid for. As was shown in *Railroad Companies* v. *Gaines*, above cited, the words "capital stock of said company," and the words "the road with all its fixtures and appurtenances," were used in the charter to describe different things. The "capital," which upon the payment by the subscribers belonged to the corporation, has been converted into the railroad and its appurtenances, and it had no separate existence as a taxable thing after the road was built and equipped. But the "capital stock," divided into shares, subscribed and paid for by the persons to whom the shares were originally issued, still has, and was by the charter intended to have, an existence separate and distinct from the property into which

the money paid for it has been converted. It can now be bought, sold, and transferred. ' Its holders and owners are the owners of the corporation. They may meet and elect directors, who are to manage its affairs. The profits of the corporation are to be divided among them in proportion "to the stock each may hold," sec. 30, and upon the dissolution of the corporation they will be entitled to receive in like proportion the proceeds of what remains of the corporate property after all the corporation debts and liabilities are paid or satisfied. In effect the contributions of subscribers of the shares were stocked as the capital of the corporation. The aggregate of the subscriptions made the aggregate of the stock. Each subscriber owned that part of the stock which his shares represented, and the aggregate of the shares represented the aggregate of the stock. It was evidently called the "capital stock of the company," because it was the stock which, when subscribed and paid for, furnished the corporation with the capital to build its road. As capital it belonged to the corporation, but as stock it belonged to the several holders of the shares into which it was divided. The charter exempted the stock from taxation clearly because the property which represented the stock had been put in its place as a taxable thing. The exemption is of the thing called the "capital stock" divided into shares. As the whole thing is exempt, so must necessarily be its several parts or shares.

It follows that the judgment of the Circuit Court was right, and it is consequently

*Affirmed.*