NICHOLS, Senior Circuit Judge.
 

 The Neptune Mutual Association, Ltd. of Bermuda (Neptune) appeals from the judgment of the United States Claims Court (Nettesheim, J.),
 
 Neptune Mut. Ass’n, Ltd. of Bermuda v. United States,
 
 13 Cl.Ct. 309 (1987), granting in part and denying in part cross-motions for summary judgment. We affirm in part, vacate in part, and remand.
 

 
 *1548
 
 I.
 
 Proceedings in the Claims Court
 

 The facts underlying the present federal tax case are set forth in the opinion of the Claims Court,
 
 id.
 
 at 310, which enables us to omit a background statement here. The court extended appropriate deference to the understanding of the IRS respecting the meaning of statutes it administers. Briefly, Neptune, the taxpayer, was organized by Massachusetts fishing companies to provide casualty insurance on their vessels, as a cooperative venture, because they found themselves unable to obtain affordable insurance from regular companies authorized to do business in Massachusetts. Neptune was located and organized in foreign territory, at first Luxembourg, then Bermuda in the years under review. The Claims Court held that Neptune was liable under 26 U.S.C. § 4371
 
 *
 
 for Federal Excise Tax (FET) on policies it had issued for the taxable periods ending June 30 in years 1979 and 1980, and that the assessment of FET for periods ending prior to 1979 was barred by the statute of limitations. The court further held that Neptune did not satisfy the criteria of 26 U.S.C. § 4373(1) which grants an exemption from the FET imposed by section 4371.
 

 Neptune appeals under 28 U.S.C. § 1295(a)(3) from that portion of the judgment holding it taxable under section 4371 and further appeals from the holding that it does not satisfy the exemption criteria of 26 U.S.C. § 4373(1). The trial court’s disposition of a penalty issue is not appealed.
 

 The United States (government or IRS) appeals under 28 U.S.C. § 1295(a)(3) from that portion of the judgment holding that the statute of limitations bars its claim for FET for taxable periods ending on or before June 30, 1978.
 

 II.
 
 Issues
 

 The issues before us on appeal are:
 

 (A) Whether later-enacted 26 U.S.C. § 842 preempts imposition of FET under 26 U.S.C. § 4371 on a foreign insurer who does business in the United States.
 

 (B) Whether Neptune satisfies the exemption criteria of 26 U.S.C. § 4373(1).
 

 (C) Whether the statute of limitations on assessment of Neptune’s FET liability started running upon the filing of an income tax return.
 

 We do not discuss all the points made in the Claims Court opinion. We see no error in them, but need not adopt them as ours to deal adequately with the arguments the parties urge in this court.
 

 III.
 
 Discussion
 

 The judgment below was rendered on cross-motions for summary judgment. To overturn summary judgment, the appellant must show that one or more of the facts on which the trial court relied was genuinely in dispute and was material to the judgment.
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986);
 
 Avia Group Int'l, Inc. v. L.A. Gear California, Inc.,
 
 853 F.2d 1557, 1561-62, 7 USPQ2d 1548, 1552 (Fed.Cir.1988). With regard to the issue of Neptune’s liability for FET in 1979 and 1980, as well as the issue of exemption under section 4373(1), there are no disputed issues of material fact, and the grant of summary judgment was therefore proper.
 
 Id.
 
 With regard to the statute of limitations issue, there are disputed issues of material fact. Accordingly, summary disposition as to this issue is inappropriate.
 

 A. FET liability under 26 U.S.C. § 4371.
 

 The dispute in the present case centers upon whether Neptune is liable for FET under I.R.C. § 4371 or whether Neptune is liable for income tax under I.R.C. § 842 in lieu of the FET. Section 4371 imposes on policies by foreign insurance companies an excise tax of “4 cents on each dollar, or fractional part thereof, of the premium paid on * * * [a] policy of casualty insurance.” By section 4374 the maker, signer, issuer, or seller of the policy is liable for the tax. Section 842 provides:
 

 
 *1549
 
 If a foreign corporation carrying on an insurance business within the United States would qualify under part I, II, or III of this subchapter for the taxable year if (without regard to income not effectively connected with the conduct of any trade or business within the United States) it were a domestic corporation, such corporation shall be taxable under such part on its income effectively connected with its conduct of any trade or business within the United States. With respect to the remainder of its income, which is from sources within the United States, such a foreign corporation shall be taxable as provided in section 881.
 

 Under the literal terms of sections 842 and 4371, Neptune is subject to both income and excise tax on the same insurance transactions. The government concedes that Neptune cannot be liable for both taxes and argues that only section 4371 applies. Further, the government contends that Neptune fails the exemption criteria of section 4373 and is therefore liable for FET.
 

 Neptune argues that section 842, where it applies, excludes section 4371. According to Neptune, the legislative histories of sections 842 and 4371 express a clear intention by Congress that the FET is only to apply to insurers who do not come within the terms of the income tax provisions of section 842. Under Neptune’s theory, section 842 is to apply in the first instance, and if it is inapplicable, then section 4371 applies. This view requires us to infer a drastic reduction in the scope of section 4371, nowhere stated but implied from the change effected in 1976 in the definition of doing business in the United States, as described below.
 

 “The starting point in every case involving construction of a statute is the language itself.”
 
 Watt v. Alaska,
 
 451 U.S. 259, 265, 101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981);
 
 Johns-Manville Corp. v. United States,
 
 855 F.2d 1556, 1559 (Fed.Cir.1988). Using the plain meaning of the statutes as our guide, we proceed only so far as to recognize that there is a problem. Under the literal terms of the statutes, Neptune is subject to double taxation on the same insurance transactions. Double taxation is never to be presumed,
 
 Tennessee v. Whit-worth,
 
 117 U.S. 129, 137, 6 S.Ct. 645, 647, 29 L.Ed. 830 (1886), and the IRS makes no claim to assess double taxation here. If the tax laws are to impose double taxation, it must be because the legislature has unmistakably so enacted.
 
 Id.
 
 The legislative histories of sections 842 and 4371 evince no clear intention by Congress to impose double taxation in the present circumstances. Because a literal interpretation of the statutes leads to a result at variance with the policy of the tax laws as a whole, we turn to the legislative histories of the statutes in question. With that aid, we determine, if we can, whether these laws were enacted for a purpose at variance with their literal terms.
 
 Reid v. Department of Commerce,
 
 793 F.2d 277, 281-82 (Fed.Cir.1986);
 
 Trustees of Indiana University v. United States,
 
 618 F.2d 736, 739, 223 Ct.Cl. 88 (1980). Clear evidence of legislative intent prevails over other principles of statutory construction.
 
 National R.R. Passenger Corp. v. National Ass’n of R.R. Passengers,
 
 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974);
 
 Johns-Manville Corp. v. United States,
 
 855 F.2d 1556, 1559 (Fed.Cir.1988).
 

 Before enactment of the predecessor statute to section 4371, foreign insurers who did not maintain a domestic agent could write casualty insurance on risks located in the United States without incurring any federal tax liability. Conversely, domestic insurers and insurers having domestic agents were subject to federal income tax. This scheme of taxation was changed by the Revenue Act of 1918, which provided that nonresident foreign insurers who were not subject to income tax on their underwriting income were liable for a 3 percent stamp tax. Revenue Act of 1918, § 237, 40 Stat. 1057, 1080, 1138 (1919). The purpose of the 1918 stamp tax, retained by the Revenue Act of 1921, § 1400, 42 Stat. 227, 320, was to equalize the tax burdens of domestic and foreign insurers.
 
 See Hearings on H.R. 8245 Before the Senate Comm. on Finance,
 
 67th Cong.,
 
 *1550
 
 1st Sess. 318 (1921); S.Rep.No. 275, 67th Cong. 1st Sess. 18 (1921); 61 Cong.Rec. 7180-81 (1921). The 3 percent stamp tax enacted in 1918 is the predecessor to the current section 4371 FET. The legislative intent behind a predecessor statute is entitled to great weight in construing the successor statute.
 
 Red Lion Broadcasting Co. v. FCC,
 
 395 U.S. 367, 380-381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969);
 
 Glidden Co. v. Zdanok,
 
 370 U.S. 530, 541, 82 S.Ct. 1459, 1468, 8 L.Ed.2d 671 (1962).
 
 See generally,
 
 Sutherland Stat. Const. § 28.10 (4th Ed.).
 

 In 1966, Congress modified the income tax laws applicable to foreign corporations. Prior to 1966, foreign corporations engaged in a trade or business in the United States were taxed at corporate rates on all U.S. source income. The corporate rate applied to all U.S. source income, regardless of whether the income was related to the trade or business in which the foreign corporation was engaged. H.R.Rep. No. 1450, 89th Cong., 2d Sess. 14. With regard to foreign corporations not engaged in a trade or business within the United States, a flat 30 percent tax rate applied to all fixed or determinable U.S. source income.
 
 Id.
 

 Under this scheme, one foreign corporation may have been taxed on investment income unrelated to its United States business at the regular corporate rate while another corporation, having an identical investment portfolio, was taxed at the flat 30 percent rate. This disparate treatment arose simply from the fact that one taxpayer was engaged in a trade or business in the United States and the other was not. Congress found that it was neither equitable nor logical for the substantial difference in tax treatment of investment income to depend on the presence or absence of a sometimes wholly unrelated domestic business.
 
 Id.
 

 To alleviate the disparate tax treatment, Congress amended section 842 to provide for a category of income “effectively connected” with a trade or business in the United States. Under the new law, foreign corporations’ underwriting income “effectively connected” with a trade or business in the United States is taxed in the same manner as domestic corporations’ income. The U.S. source income not “effectively connected” continues to be taxed at a flat 30 percent rate. 26 U.S.C. § 881(a).
 

 At the time of the 1966 changes to section 842, it was the position of the IRS that the source of underwriting income was determined by the place where the insurance contract was executed. S.Rep.No. 938, 94th Cong., 2d Sess., pt. 1, at 257, U.S.Code Cong. & Admin.News 1976, at 2897, 3687. Therefore, the 1966 changes in the taxation of U.S. source income did not affect taxation of foreigners’ income from insurance contracts executed abroad. However, the source rules were changed in 1976, and the combined effect of the 1976 source rule changes and the 1966 income tax changes created an unintended overlap in taxation of underwriting income from insurance contracts executed abroad.
 

 The 1976 changes to the source rules provided that contracts to insure risks located in the United States produced taxable U.S. source income regardless of the place where the contract was executed. 26 U.S.C. § 861(a)(7).
 

 Under the old source rules, sections 842 and 4371 dovetailed perfectly with regard to income from casualty insurance contracts executed abroad. Foreign insurers’ income from these contracts was foreign source income and generally did not incur income tax liability; only the excise tax applied. After 1976, the income generated from these contracts was still textually subject to FET as it had been, but the same income was also to be regarded as U.S. source income subject to income tax under the literal terms of section 842, so far as it insured United States risks. Our analysis of the legislative histories to sections 842 and 4371 sheds no light on Congress’ intent regarding taxation of foreigners’ underwriting income from insurance contracts executed abroad; the double taxation result appears unintended, and we can discern no legislative intent behind this unforeseen result.
 

 Without any guidance from the legislative histories, we turn to maxims of statu
 
 *1551
 
 tory construction. The tax statutes at is.sue here contain no express, exemption from .one another. “This means that any repealer of [one in favor of the other] * * * must be discerned as a matter of implication, and ‘[i]t is a cardinal principle of construction that repeals by implication are not favored.’ ” [Citations omitted.]
 
 Silver v. New York Stock Exchange,
 
 373 U.S. 341, 357, 83 S.Ct. 1246, 1257, 10 L.Ed.2d 389 (1963).
 
 Accord Randall v. Loftsgaarde
 
 n, 647, 106 S.Ct. 3143, 92 L.Ed.2d 525 (1986);
 
 Watt v. Alaska,
 
 451 U.S. 259, 266-67, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981);
 
 Radzanower v. Touche Ross & Co.,
 
 426 U.S. 148, 154, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1975);
 
 United States v. United Continental Tuna Corp.,
 
 425 U.S. 164, 168, 96 S.Ct. 1319, 1322, 47 L.Ed.2d 653 (1076);
 
 Morton v. Mancari,
 
 417 U.S. 535, 549, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974). “Repeal is to be regarded as implied only if necessary to make the [later enacted law] work, and even then only to the minimum extent necessary. This is the guiding principle to reconciliation of the two statutory schemes.”
 
 Radzanower,
 
 426 U.S. at 155, 96 S.Ct. at 1994,
 
 quoting Silver,
 
 373 U.S. at 357, 83 S.Ct. at 1257.
 

 There are, however:
 

 two well-settled categories of repeals by implication — (1) where provisions in the two acts are. in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and .(2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate, similarly as a repeal of the earlier act. But, in either case, the intention of the legislature to repeal must be clear and manifest. .
 

 Radzanower,
 
 426 U.S. at 154, 96 S.Ct. at 1993.
 

 We have concluded that the overlap of sections 842 and 4371 was unintended and the result of legislative inadvertence; it is thus clear that statutes at issue here do not fall into category number two. Regarding category number one, we find this category similarly inapposite. Laws are in irreconcilable conflict where they cannot mutually co-exist. It is not enough to show that the two statutes produce differing results when applied to the same.factual situation, for that no more than states the problem.
 
 Radzanower,
 
 426 U.S. at 155, 96 S.Ct. at 1994. If the basic purposes of the.later-enacted law is fairly served despite giving full effect to the earlier enacted one, the laws are not in irreconcilable conflict.
 
 Id.
 

 Disfavoring an implied repeal of the earlier enacted excise tax statute, as we must, we turn to whether the two. statutes are in irreconcilable conflict,
 
 i.e.
 
 whether the basic purposes of both the income and excise tax statutes can still be served by giving full effect to the earlier enacted FET statute. The FET statute remains' necessary and cannot be deemed wholly, repealed since there will be cases still where a foreign insurer of United^ States risks escapes United States income tax. In that case, the excise tax by. section 4374 falls on the salesman. As regards the cases included in the overlap, presumably, as here, the IRS will assess the tax that produces the more revenue. . Thus avoiding United States regulation may have adverse pecuniary consequences for the insurer, as here. This does not appear inconsistent with the apparent policy of the law.
 

 Before 1976, section 4371 served three purposes: tó raise revenue, to reduce tax avoidance, and to assist the states in regulating the insurance business within their jurisdictions. This latter purpose was accomplished by providing a disincentive to sale of insurance by foreign insurers without having a local agent the state could reach and without obtaining authority to do business from the state. As is well known, the Federal Government, as a general thing, yields regulation of insurance to the several states, but such states unaided may not be able to regulate as effectively as the Federal Government would have done, because of the limited reach of their power. The disincentive of section 4371 therefore, is an important prop to the state’s authority. This disincentive would be eliminated if we interpreted sections 842 and 4371 as appellant would have us do. There would be no difference in federal tax consequences whether or not the foreign compa
 
 *1552
 
 ny had agents in the states when it sold the policies, or approached the state officials to obtain authorization.
 

 Apart from, the canon disfavoring repeal by implication, our construction of sections 842 and 4371 is compelled by the more specific terms of the excise tax statute. The tax of section 842 is directed generally to foreign insurers’ United States income, whatever its origin; the provisions of section 4371, however, are tailored specifically to the taxation of insurance underwriting income from insuring United States risks. In determining which is more specific, moreover, section 4371 must be read with section 4373. So read, it applies specifically only to receipts from policies executed abroad or by a company not authorized to do business in the state where it was executed, or both. “Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one,
 
 regardless of the priority of enactment.”
 
 . [Emphasis supplied].
 
 Morton v. Mancari,
 
 417 U.S. 535, 550-51, 94 S.Ct. 2474, 2482-83, 41 L.Ed.2d 290 (1973). To the same effect is
 
 Radzanower v. Touche Ross & Co., supra. See generally,
 
 Gen.Couns.Mem. 36,366 (Aug. 7, 1975); Sutherland Stat. Const. § 23.15 (4th Ed.). Accordingly, the more specific terms of section 4371 prevail over any conflicting provisions of section 842.
 

 B. Exemption Under 26 U.S.C. § 4373
 

 Having concluded that Neptune comes within the scope of section 4371, we next consider whether Neptune satisfies the criteria of section 4373(1) which exempts certain insurers from excise tax liability. The pertinent provision of section 4373 reads:
 

 The tax imposed by section 4371 shall not apply to—
 

 (1) Domestic agent. — Any policy * * * signed or countersigned by an officer or agent of the insurer in a State, or in the District of Columbia, within which such insurer is authorized to do business * * *
 

 Neptune argues that it fulfills each of these exemption criteria of 4373(1).
 

 The record demonstrates that the Commissioner of Insurance of the Commonwealth of Massachusetts (Commissioner) regarded the soliciting or countersigning of insurance policies within Massachusetts by Neptune to be a clear violation of state law. Mass.Gen.Laws Ann. ch. 175, §§ 160, 162. Neptune, through its attorney, conceded this point in a letter to the Internal Revenue Service dated September 30, 1982. Thus, whatever authorization, if any, was given by the Commissioner of Insurance, the authorization was granted with the understanding that Neptune would not be signing policies in Massachusetts.
 

 The parties agree that Neptune initialed and approved insurance applications in Massachusetts, but they disagree as to whether this activity constitutes the signing or countersigning of policies. If this activity did constitute the signing or countersigning of policies, the facts represented to the Commissioner were not the facts under which Neptune operated. Indeed, the scenario would be precisely the one which the Commissioner regarded as a clear violation of state law. Accordingly, the asserted authorization would be invalid, and Neptune would fail the authorization requirement of 4373(1).
 

 If the activity did not constitute the signing or countersigning of policies, then Neptune fails the signing requirement of 4373(1). Under either interpretation, Neptune fails the requirements of section 4373(1) and is liable for the excise tax.
 

 We need not rest our conclusion on the above logic alone, however, for the record demonstrates that Neptune was not authorized to do business in Massachusetts and did not sign or countersign policies there.
 

 1.
 
 Authorization by the Commonwealth of Massachusetts
 

 Prior to the formation of Neptune’s predecessor, an outline of the proposed insurance program was submitted to the Commissioner. The operating plan prescribed the insurance association’s activities so that they would not come within the purview of Massachusetts law. In a letter
 
 *1553
 
 dated May 25,1972, the Commissioner stated that there was no legal bar to the formation of Neptune’s predecessor. The Commissioner reiterated this position specifically with regard to Neptune in a letter dated February 10, 1982. The importance of these letters to this case requires that we state their full text, and we do so in Appendices A and B hereinafter.
 

 We note that for the exemption of section 4373(1) to apply, the state must “authorize” the insurer to do business. This characterization of the weary shrug of the shoulders reflected in the letters of May 25, 1972, and February 10, 1982, does violence to the plain meaning of “authorize.” Implicit in the first letter, and made explicit in the second, is that the state does not have jurisdiction over the activity involved. But the essence of authorization is that it emanates from an authority that does have jurisdiction. Webster’s Third New International Dictionary, Unabridged, at 146 (1976) puts it this way:
 

 [T]o endorse, empower, justify, or permit by or as if by some recognized or proper authority (as custom, evidence, personal right, or
 
 regulating power).
 
 [Emphasis supplied.]
 

 There is more to this definition, but nothing to refute the construction that an “authorizing” entity is necessarily one that has power to prohibit or permit the activity authorized. The whole point of the two letters is that the state agency lacked such power. The “plain” meaning of section 4373(1) is that the state agency that granted the supposed authorization must have had authority to approve or disapprove, which the state commissioner of insurance here did not have. It subverts one of the purposes of section 4373(1) to suppose that authorization can be imputed to a state agency which says it lacks power to do anything.
 

 Neptune argues that because the Commissioner did not prevent the conduct of its business, it was authorized to do business there. In support of this theory, Neptune cites two authorities not binding on this court. Rev.Rul. 80-225, 1980-2 C.B. 318 and Gen.Couns.Mem 38,052 (Aug. 20,1979). The memorandum sets forth:
 

 [I]f state law permits a foreign insurer to engage in certain insurance activities within that state (signing or countersigning policies) without obtaining a license and, as a result of these activities, the foreign insurer is engaged in business in that state and thus is engaged in business in the United States under sections 842 and 864, then the foreign insurer is sufficiently (de facto) authorized to do business (for purposes of section 4373(1)) within the state in which it is so conducting business.
 

 * * * # * *
 

 [I]f the underwriting income is not subject to the income tax, then such insurer will not be considered to be authorized to do business for purposes of section 4373(1) and the section 4371 excise tax will apply to the premiums paid.
 

 “Permit” allows of a wider variety of synonyms than “authorize,” but “authorize” is one of its meanings, and therefore the quotation is not free of ambiguity. While Neptune endorses only the first paragraph quoted above, the memorandum must be evaluated in its entirety. The memorandum clearly expresses the view that the interpretation of “authorized” broader than the “plain meaning” is endorsed in order to avoid the inequitable result of liability for both excise and income taxes on the same insurance transactions. The memorandum is equally clear, however, in expressing the view that the broad interpretation of “authorized” is endorsed only to avoid the double taxation result, and that such a liberal interpretation should be abandoned if there is no danger of double taxation. Because it is conceded that Neptune’s underwriting income is not subject to both income tax and FET, the memorandum suggests that a more literal reading of the term “authorized” is appropriate. This comports with the general rule that tax exemptions are to be narrowly construed.
 
 Bingler v. Johnson,
 
 394 U.S. 741, 751, 89 S.Ct. 1439, 1445, 22 L.Ed.2d 695 (1969);
 
 Commissioner v. Jacobson,
 
 336 U.S. 28, 48, 69 S.Ct. 358, 369, 93 L.Ed. 477 (1949).
 

 
 *1554
 
 Neptune also relies on Rev.Rul. 80-225, 1980-2 C.B. 318 for the proposition that it was authorized to do business in Massachusetts. The taxpayer in that ruling was a surplus lines insurer. The laws of the state in the cited revenue ruling
 
 expressly
 
 permitted unlicensed surplus lines insurers to conduct their business through a person whom the state has licensed as a surplus lines broker. The law providing for such representation of unlicensed insurers was express authorization for the unlicensed insurers to do business in that state. In the present case, there is no Massachusetts law which grants Neptune express permission to conduct its business in the Commonwealth of Massachusetts. In fact, Neptune has carefully tailored its activities so that they fall outside the jurisdiction of Massachusetts law. The fact that Massachusetts believes itself powerless to stop Neptune’s activities does not transform its impotence into authorization.
 

 Neptune’s remaining arguments concerning authorization under 4373(1) are without merit. Briefly, Neptune contends that the requirements for authorization which came into effect in 1973, one year after formation of Neptune’s predecessor, were implicitly waived when the Commissioner reiterated his position specifically with regard to Neptune in the 1982 letter. There are elaborate procedural measures required before such a waiver can be given. Mass. Gen.Laws Ann., ch. 175, § 160. None of these procedural hallmarks were evident in the present case so as to indicate that the Commissioner or any one else was aware that a waiver was being made. Moreover, the present controversy concerns the periods ending June 30,1977, through June 30, 1980. The purported waiver was not in effect during this time and is thus irrelevant to whether Neptune was authorized during the years for which it seeks a refund.
 

 Neptune also argues that the Commissioner’s failure to prosecute Neptune constitutes authorization. We have uncovered no legal precedent to this effect and decline to create this rule of law.
 

 2.
 
 Signing or Countersigning Policies
 

 The second requirement of section 4373(1) is that the taxpayer sign or countersign policies in the state in which it is authorized to do business. In its written protest,- Neptune stated:
 

 Through the time the taxpayer was incorporated in Luxembourg [February 24, 1972 through July 14, 1976] the Certificates of Entry,
 
 which are the policies issued by the taxpayer,
 
 were signed in the U.S. by the taxpayer’s U.S. Manager, Independence Marine Services. Following the incorporation in Bermuda, [July 13,1976] although
 
 policies were no longer actually signed
 
 in the U.S. all other indicia of acceptance and servicing of the policies continued to occur in the U.S. * * *. [Emphasis supplied.]
 

 Protest of Neptune, filed August 19, 1981.
 

 By its own admission, Neptune did not sign policies in the United States as it now argues. Further, Neptune’s protest and refund claims do not address the argument that Neptune is exempt from FET under 4373(1). Because Neptune failed to set forth satisfaction of section 4373(1) as a ground for recovery in either its refund claim or its written protest, we cannot consider granting the requested relief on this basis.
 
 United States v. Felt & Tarrant Mfg. Co.,
 
 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025 (1931);
 
 Burlington Northern, Inc. v. United States,
 
 684 F.2d 866, 231 Ct.Cl. 222 (1982);
 
 Union Pac. R.R. v. United States,
 
 389 F.2d 437, 182 Ct.Cl. 103 (1968).
 

 3.
 
 Statute of Limitations
 

 The statute of limitations for collection of taxes is three years after the date the return was filed. 26 U.S.C. § 6501(a). If no return is filed, the statute of limitations does not run. 26 U.S.C. § 6501(c)(3). In the present case, the income tax returns for the periods ending June 30, 1977, and June 30, 1978, were filed more than three years before the assessment for FET was made. Neptune argues that the statute of limitations bars collection of the excise taxes for these periods. The government’s position is that no excise tax returns were
 
 *1555
 
 filed, and the statute of limitations is therefore inapplicable.
 

 The policy behind the “no return” proviso which removes the effect of the statute of limitations is that it is unreasonable to expect the government to be diligent in its efforts to collect unpaid taxes if the facts giving rise to the tax liability are not disclosed.
 
 See Dowell v. Commissioner,
 
 614 F.2d 1263, 1265-66 (10th Cir.1980). In keeping with this policy, the law holds that if a taxpayer files an incorrect return, but the return sets forth all of the data necessary to compute the taxes owed, the statute of limitations begins to run.
 
 Germantown Trust Co. v. Commissioner,
 
 309 U.S. 304, 309-10, 60 S.Ct. 566, 568-69, 84 L.Ed. 770 (1939);
 
 Zellerbach Paper Co. v. Helvering,
 
 293 U.S. 172, 180, 55 S.Ct. 127, 130, 79 L.Ed. 264 (1934). Despite the taxpayer error, it is reasonable to expect prompt attempts at assessment.
 

 The government relies on
 
 Commissioner v. Lane-Wells Co.,
 
 321 U.S. 219, 64 S.Ct. 511, 88 L.Ed. 684 (1944), for the proposition that the law requires Neptune to file the correct tax return form before the statute of limitations starts running. In the
 
 Lane-Wells
 
 decision, the taxpayer stated on its corporate tax return that it was not a personal holding company, and it did not file a personal holding company tax return. In fact, the taxpayer was a personal holding company and its statement to the contrary was an error made in good faith.
 

 In distinguishing the taxpayer in
 
 Lane-Wells
 
 from the one in
 
 Germantown,
 
 the Court explained that the
 
 Germantown
 
 taxpayer filed a return containing all of the data from which the unpaid tax could .be computed and assessed.
 
 Lane-Wells,
 
 321 U.S. at 222, 64 S.Ct. at 513. In contrast, the
 
 Lane-Wells
 
 taxpayer was liable for two taxes, was under an obligation to file two returns, and filed only a single return which did not contain adequate information from which to compute all taxes owed.
 
 Lane-Wells,
 
 321 U.S. at 223, 64 S.Ct. at 513.
 

 Neptune suggests that the
 
 Lane-Wells
 
 decision applies only to taxpayers liable for two separate taxes required to be reported on two separate returns. We disagree. The controlling question is whether the IRS was apprised of adequate information from which to compute the taxes owed.
 

 The government argues that the information on Neptune’s income tax returns was not presented in a form from which a determination of liability could be readily accomplished. While the
 
 Lane-Wells
 
 decision upholds a regulation requiring returns to be filed on a specific tax return form, it does not go so far as to hold that noncompliance with such a regulation
 
 per se
 
 tolls the statute of limitations. Whether Neptune’s income tax return was adequate to apprise the IRS of the facts on which to predicate FET liability, as well as the amount owed, is a disputed question of material fact. Summary judgment is inappropriate in the face of a material disputed fact.
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 248,106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986);
 
 Avia Group Int’l, Inc. v. L.A. Gear California, Inc.,
 
 853 F.2d 1557, 1561-62, 7 USPQ2d 1548, 1552 (Fed.Cir.1988). Any doubt must be resolved in favor of the presence of disputed issues.
 
 Lemelson v. TRW, Inc.,
 
 760 F.2d 1254, 1260-61, 225 USPQ 697, 701 (Fed.Cir.1985). Because the record contains a disputed issue of material fact, summary judgment on this issue is improper and is vacated.
 

 Conclusion
 

 We affirm that portion of the judgment holding Neptune liable for FET for the periods ending in 1979 and 1980. We vacate that portion of the judgment barring the government’s claim for FET for the periods ending in 1977 and 1978. We remand for further proceedings consistent with this opinion.
 

 COSTS
 

 Costs are awarded to the government.
 

 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 

 
 *1556
 
 APPENDIX A
 

 [[Image here]]
 

 
 *1557
 
 [[Image here]]
 

 
 *1558
 
 [[Image here]]
 

 *
 

 The years at issue in this case antedate the Tax Reform Act of 1986. All references are to the Internal Revenue Code of 1954, as amended.