**DISTRICT OF COLUMBIA OFFICE OF TAX AND REVENUE, Petitioner**

v.

**SUNBELT BEVERAGE, LLC, Respondent.**

No. 10–AA–1331.

District of Columbia Court of Appeals.

Argued Sept. 26, 2012.

Decided April 11, 2013.

Mary L. Wilson, Senior Assistant Attorney General of the District of Columbia, with whom Irvin B. Nathan, Attorney General, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for petitioner.

Diann L. Smith for appellee at oral argument; Stephen P. Kranz for respondent on the brief.

Before FISHER, BECKWITH, and EASTERLY, Associate Judges.

EASTERLY, Associate Judge:

This case presents a statute of limitations question within the context of business franchise taxes. Respondent, Sunbelt Beverage, with no intent to evade payment of the District's business franchise tax, filed the wrong return for the right tax. It thereby notified the Office of Tax and Revenue (OTR) that it was doing business in the District of Columbia and gave OTR information about its income. However, because it incorrectly treated itself as a pass-through entity for its parent holding corporation, it failed to provide its apportionment factor (the percentage of its net income that should be subject to taxation by the District), which was necessary to permit OTR to correctly calculate any taxes owed. We are asked to determine whether this wrong return for the right tax was a nullity or whether it triggered the default three-year statute of limitations for the assessment and collection of taxes in the District of Columbia.

Petitioning for review of an order by the Office of Administrative Hearings (OAH) that granted summary judgment to Sunbelt Beverage, OTR argues that Sunbelt Beverage's filed returns for the tax years in question—2002, 2003, and 2004—were nullities, both because they did not contain Sunbelt Beverage's apportionment factor, and because Sunbelt Beverage's filing mistake was unreasonable. Accordingly, OTR asserts that it could pursue Sunbelt Beverage for unpaid taxes at any time under D.C.Code § 47–4301(d)(1)(C) (2001 & Supp.2004) (allowing that a "tax may be assessed, or a proceeding in court for the collection of the tax may begin without assessment, at any time" if the taxpayer has "fail[ed] to file a return"). For its part, Sunbelt Beverage maintains that its mistakenly filed returns triggered the default three-year statute of limitation under D.C.Code § 47–4301(a) (2001).

▮▮▮ We review grants of summary judgment from OAH *de novo, Woodland v. Dist. Council 20,* 777 A.2d 795, 798 (D.C. 2001), and will affirm if the record demonstrates "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," Super. Ct. Civ. R. 56(c); *see* 1 DCMR §§ 2801.2, 2812, 2828 (2004) (replaced in its entirety on December 31, 2010) (Per OAH Rules of Practice and Procedure, a party may move for summary judgment and where a procedural issue like the standard of review for a summary judgment motion is not specifically addressed, OAH

may rely on the Superior Court Rules of Civil Procedure as persuasive authority). If the facts are undisputed, as here, whether the statute of limitations bars suit is likewise a question of law that we review *de novo*. *Medhin v. Hailu*, 26 A.3d 307, 310 (D.C.2011).

■ We recognize OTR's need to receive accurate and complete information from taxpayers. But the structure of the District's statute of limitations—which sets out a default three-year limitation period for general deficiencies in tax payments, extends that limitation period to six years when a taxpayer significantly underreports income, and then dispenses with any limitation period at all where a taxpayer engages in fraud or fails to file a return—does not appear to support OTR's position that a return may be automatically disregarded for statute of limitations purposes if it is missing any piece of information that precludes the correct calculation of tax. Moreover, Supreme Court case law interpreting the analogous federal statute of limitations holds that although a "return" generally must contain the information necessary to compute and assess deficiencies, "[p]erfect accuracy or completeness is not necessary to rescue a return from nullity"; rather, "if it purports to be a return, is sworn to as such, and evinces an honest and genuine endeavor to satisfy the law," it may trigger a statute of limitations, even if "at the time of filing the omissions or inaccuracies are such as to make amendment necessary." *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172, 180, 55 S.Ct. 127, 79 L.Ed. 264 (1934) (citation omitted).

With this case law as our guide, we conclude that Sunbelt Beverage was rightly afforded the protection of the default three-year statute of limitation under D.C.Code § 47–4301(a). Sunbelt Beverage, in a good faith effort to comply with the District's tax laws, filed the wrong form for the right tax, accurately reported its gross income, deductions, and ordinary income, and identified its corporate parent, which also filed taxes in the District and which Sunbelt Beverage asserts paid tax for Sunbelt Beverage's income. The sole information Sunbelt Beverage failed to provide—because it mistakenly believed it could pass through its income to its parent company, as a partnership may under the federal tax scheme—was an apportionment factor which would have only reduced the amount of Sunbelt Beverage's taxable income. Under the circumstances, this information could properly be characterized as a necessary "supplement" or "amendment" to the original form, *see Zellerbach*, 293 U.S. at 180, 55 S.Ct. 127 rather than basic "facts on which liability [for the business franchise tax] would be predicated," *Commissioner v. Lane–Wells Co.*, 321 U.S. 219, 223, 64 S.Ct. 511, 88 L.Ed. 684 (1944). In its absence, we cannot say that Sunbelt Beverage "fail[ed]" to file a return" under D.C.Code § 47–4301(d)(1)(C).

## I. Background

### A. The Taxation System for Businesses Operating in the District of Columbia

To place the salient facts in context, we briefly review the taxation structure for businesses operating in the District of Columbia. The District imposes a franchise tax upon businesses "for the privilege of carrying on or engaging in any trade or business within the District and of receiving such other income as is derived from sources within the District...." D.C.Code § 47–1810.01(a)(2) (2001). A business filing a tax return in the District is required to file one of three forms with OTR: a DC Form D–65, a DC Form D–30, or a DC Form D–20.

The instructions in the D–65 ("Partnership Return of Income") direct that, "[e]xcept for partnerships required to file an unincorporated business franchise tax return, DC Form D–30, all partnerships [which are defined to include limited liability companies [1]] engaged in any trade or business in DC or which received income from sources in DC, must file a DC Form D–65." [2] The D–65 is an informational return. A business that files a D–65 simply alerts the District to its existence and the amount of its ordinary income. It makes no apportionment calculations and pays no tax because the District treats the partnership as a pass-through entity—that is, each partner pays its portion of the partnership's tax on its individual return. [3] The D–65 is analogous to a federal Form 1065 ("U.S. Return of Partnership Income"). Indeed, the D–65 explicitly links itself to the federal Form 1065: businesses that file a D–65 are instructed to attach their federal Form 1065, along with the 1065's supporting schedules. [4] The D–65 instructions also direct a taxpayer that, for purposes of filing in the District, an LLC "must use the same classification on [its]

DC return as used on [its] federal return" and the only exception to classifying a limited liability company as a partnership "is if the IRS has classified [it] differently." [5]

These instructions notwithstanding, there is a significant difference between the District business franchise tax filing system and its federal analog. Unlike the federal system where a partnership files a federal Form 1065 and acts as a pass-through for its owners unless it elects to do otherwise, [6] in the District, a partnership (including a limited liability company) may only file a D–65 and treat itself as a pass-through entity if its gross income attributable to the District is $12,000 or less [7] and it meets other specified criteria. [8]

Businesses operating in the District which do not file a D–65 must file one of two other forms. A partnership that exceeds the $12,000 gross income limit is required to file a D–30 ("Unincorporated Business Franchise Tax Return"). [9] An incorporated business must file a Form D–20 ("Corporation Franchise Tax Return"). A business that files either a D–30 or D–20

---

1. Form D–65 Partnership Return of Income Instructions, 2004 [hereinafter "D–65 Instructions"] at A ("A limited liability company is classified as a partnership."). OTR attached the D–65 Instructions for 2004 to its Opposition to Sunbelt's Motion for Summary Judgment. Because they are in all relevant respects substantively the same as the 2002 and 2003 instructions, we cite to the 2004 instructions whenever we discuss the instructions for the D–65.

2. D–65 Instructions at A.

3. D–65 Instructions at H (requiring the partnership to attach to the D–65 "a schedule showing the pass-through distribution of income for all members of the partnership").

4. D–65 Instructions at H.

5. D–65 Instructions at A.

6. "Taxation of Limited Liability Companies," IRS Publication 3402 (2010), available at http://www.irs.gov/publications/p3402/ar02.html.

7. D–65 Instructions at A (A form D–30 "must be filed by an unincorporated business if its gross income resulting from engaging in or carrying on any trade or business in DC plus any other gross income received from DC sources [ ] amounts to more than $12,000 during the year, regardless of whether it had net income.").

8. Among other things, the partnership also needs to be engaged in an "unincorporated business," which includes "any trade or business ... other than a trade or business conducted or engaged in by any corporation." D–65 Instructions at A.

9. See supra note 7.

in the District is asked on the form to identify an apportionment factor, which is derived from a consideration of its sales, payroll, and property in the District. D.C.Code § 47–1810.02(d) (2001 & Supp. 2005) (defining the apportionment factor for business income). The business is required to apply that apportionment factor to its net income to identify the amount of its income that is derived from the District and thus subject to taxation. The business is then asked to apply the tax rate to its taxable income and thereby arrive at the amount due in taxes.

## B. Facts and Procedural History

Having explained the taxation framework for businesses operating in the District, we turn to the facts of this case, which are undisputed and memorialized in stipulations by the parties. During the tax years in question, 2002, 2003, and 2004, Sunbelt Beverage, a Delaware limited liability company, was owned by Sunbelt Holding, Inc., a Delaware corporation. Sunbelt Beverage, in turn, solely owned Washington Wholesale Liquor Company, LLC,[10] an alcohol distribution business operating in the District of Columbia. Sunbelt Beverage did not do any other business in the District; its sole source of income (and its parent corporation Sunbelt Holding's sole source of income) from the

District of Columbia was Washington Wholesale.

For tax years 2002, 2003, and 2004, Sunbelt Holding, represented by its tax preparer Deloitte & Touche LLP, correctly filed the D–20 form for corporate franchise taxes. On that form it identified, *inter alia*, its net national income, its D.C. apportionment factor, and the resulting "total District Taxable income." Sunbelt Holding paid taxes consistent with its returns, and, although Washington Wholesale was not identified by name, Sunbelt Holding's tax payments included "tax on all income of Washington Wholesale for the 2002, 2003, and 2004 tax years."[11]

During that same time period, Sunbelt Beverage, also represented by Deloitte & Touche LLP, filed the incorrect tax forms with OTR.[12] Effectively treating itself like a pass-through entity for Sunbelt Holding, Sunbelt Beverage filed a D–65 "partnership return of income" form and paid no taxes. On its D–65, Sunbelt Beverage checked a box indicating that it was not filing a D–30. Even though the form directed the taxpayer to "attach an explanation" "[i]f you are filing this Form D–65, instead of Form D–30," Sunbelt Beverage did not attach an explanation. Sunbelt Beverage has acknowledged that, given the structure of its business and the gross income it had for the years in question,

10. Washington Wholesale was treated as a disregarded entity in the relevant tax years; its income, credits, and expenses are included in the total figures reported in the tax returns filed by its owner, Sunbelt Beverage. *See* D.C.Code § 29–1074 (2001), *repealed by* D.C. Law 18–378, § 3(s), 58 D.C.Reg. 1720 (Feb. 27, 2011) (current version at D.C.Code § 47–1808.06a (2012 Supp.)); Treas. Reg. 301.7701–3(a) (2006); D.C.Code § 29–1074.

11. Despite these tax payments by the parent corporation on Sunbelt Beverage's only D.C. income, OTR claims that Sunbelt Beverage owes the District money in unpaid business

franchise taxes. Sunbelt Beverage does not concede any tax delinquency.

12. These forms were filed on October 15 of the year immediately following the relevant tax year. The original forms are not in the record. OTR is statutorily obligated to retain records for six years, D.C.Code § 47–1805.04(f) (2005), but at some point prior to this litigation OTR's copies were apparently lost or destroyed. The parties agreed that the unsigned copies of returns supplied by Deloitte & Touche are true and accurate copies of the returns filed by Sunbelt Beverage.

this was an error and it should have filed a D-30. The parties agree that this was an honest mistake and that Sunbelt Beverage had no intent to evade its tax obligations to the District.

Sunbelt Beverage fully and accurately completed its D-65s. But this form did not request the same information that the D-30 (or D-20) would have. Although Sunbelt Beverage reported its gross national income, deductions, and ordinary (or net) income nationally—figures which included but did not separately identify amounts attributable to Washington Wholesale—Sunbelt Beverage did not, because the D-65 did not ask it to, identify its D.C. apportionment factor or its "total District Taxable income." Sunbelt Beverage did note that it had a corporate parent, and it provided the address and Federal Employer ID number for Sunbelt Holding, which matched the information listed by Sunbelt Holding on its D-20 forms filed for the same tax years.[13]

At some point, OTR determined that Sunbelt Beverage might owe business franchise taxes to the District. The record contains little information about how or when Sunbelt Beverage came to OTR's attention and why it decided to initiate an inquiry. The only evidence OTR put in the record on this issue was an affidavit by Jacqueline Mason, a lead auditor from OTR. According to the affidavit, on an unspecified date, Ms. Mason contacted Deloitte & Touche's Director of Multistate Tax Service, Joseph G. Carr.[14] Ms. Mason informed Mr. Carr that she was unable to calculate Sunbelt Beverage's D.C. apportionment factor and he gave her the information she needed. Subsequently, on September 18, 2008, Deloitte & Touche acknowledged that "for taxable years 2002 through 2004, Sunbelt Beverage mistakenly filed Form 65 in lieu of Form D-30."

Based on the information it received from Mr. Carr, OTR sent a "Notice of Proposed Audit Changes" to Sunbelt Beverage in August 2008, outlining Sunbelt Beverage's alleged tax delinquency. OTR later gave Sunbelt Beverage credit for Sunbelt Holding's tax payments, and in July 2009, issued a "Notice of Proposed Assessment of Tax Deficiency," reflecting a revised calculation of taxes owed. Although the record does not reflect when, at some point OTR also notified Sunbelt Beverage that it was assessing penalties for Sunbelt Beverage's failure to file a qualifying return. In total, OTR indicated that it would seek payment of more than a million dollars from Sunbelt Beverage in back taxes, interest, and penalties.[15]

Shortly after it received the 2009 Notice of Proposed Assessment of Tax Deficiency, Sunbelt Beverage filed a protest with OAH challenging the proposed assessment. It then moved for summary judgment on the ground that the filing of its D-65s for tax years 2002, 2003, and 2004 had triggered the default three-year statute of limitation under D.C.Code § 47-4301(a) and that the time period for the District to pursue unpaid taxes had expired. OTR opposed the motion, arguing that Sunbelt Beverage's returns did not trigger the three-year stat-

---

13. In its 2002 and 2003 returns Sunbelt Beverage responded affirmatively to the question whether "any partners in this partnership [are] also partnerships or corporate entities." In its 2004 return, Sunbelt Beverage answered this question in the negative but still attached a supporting schedule, as it had for its 2002 and 2003 returns, in which it listed Sunbelt Holding, Inc., as its corporate parent.

14. Ms. Mason's affidavit bears two dates— June 12, 2008 (typed), and May 3, 2010 (handwritten).

15. OTR never issued a final assessment for the 2002, 2003, and 2004 tax years.

ute of limitation because the D–65s did not provide information necessary to accurately calculate the taxes Sunbelt Beverage owed. OAH rejected this argument, determined that the three-year statute of limitation had been triggered and had expired, and granted summary judgment in favor of Sunbelt Beverage. This petition for review followed.

## II. Analysis

The statute of limitations for tax assessments and collections is set forth in D.C.Code § 47–4301 (2001 & Supp.2004). Section 47–4301(a) establishes a default three-year statute of limitation for general deficiencies: "the amount of a tax imposed under this title shall be assessed within 3 years after the return was filed.... A proceeding in court without assessment for the collection of the tax shall not commence after the expiration of such period." Section 47–4301(d) provides exceptions to the three-year default. Under section 47–4301(d)(2) the three-year statute of limitation for income and franchise taxes is doubled to six years when a taxpayer "omits an amount properly includible in gross income which is in excess of 25% of the amount of gross income stated in the return...." Moreover, as is relevant to business franchise tax, section 47–4301(d)(1) provides that a "tax may be assessed, or a proceeding in court for the collection of the tax may begin without assessment, at any time" "in the case of a(A) false or fraudulent return with the intent to evade tax, (B) willful attempt in any manner to defeat or evade tax imposed by this title, [or] (C) failure to file a return...." D.C.Code § 47–4301(d)(1) (2001 & Supp.2004). OTR argues that the exception to the three-year default for a "failure to file a return" under section 47–4301(d)(1)(C) applies in this case.

This court has not addressed what constitutes filing a return under D.C.Code § 47–4301(a) or failing to file a return under D.C.Code § 47–4301(d)(1)(C). The starting point for statutory interpretation is the plain language,[16] and, if we were to look no farther, our work would be quickly done. Sunbelt Beverage did file a return, a D–65, and thus under a literal reading of the statute would seem to have triggered the default three-year statute of limitation. But it is well established that " 'the literal meaning of a statute will not be followed when it produces absurd results,' " *Peoples Drug Stores, Inc.*, 470 A.2d at 754 (quoting *Varela*, 424 A.2d at 65), and that "a court may refuse to adhere strictly to the plain wording of a statute in order 'to effectuate the legislative purpose,' " *id.* (quoting *Mulky v. United States*, 451 A.2d 855, 857 (D.C.1982)). We do not think the District Council intended that a taxpayer could trigger the statute of limitations by submitting nothing more than an OTR-approved form with the taxpayer's identifying information on it,[17] and both parties agree that something more is required. The question is whether that something more required Sunbelt Beverage to submit in its return perfectly accurate and complete information so as to permit the correct calculation of tax.

To answer this question we are guided by the structure and manifest purpose of

**16.** *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C.1983) (" 'The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used.' " (quoting *Varela v. Hi–Lo Powered Stirrups, Inc.*, 424 A.2d 61, 64 (D.C.1980) (en banc))).

**17.** Like the majority of courts, we agree that an "all zeros" return is a nullity. *See Coulton v. Commissioner*, 90 T.C.M. (CCH) 154, 2005 WL 2078518 (T.C.2005) (citing cases).

D.C.Code § 47–4301 [18] and the Supreme Court case law interpreting what constitutes a return so as to trigger the predecessor of the analogous federal statute of limitations, 26 U.S.C. § 6501—the statute on which D.C.Code § 47–4301 was modeled.[19] Both parties likewise rely on this Supreme Court case law. In addition, they cite to a four-part test distilled from this case law by the United States Tax Court in *Beard v. Commissioner*, 82 T.C. 766, 1984 WL 15573 (1984), *aff'd*, 793 F.2d 139 (6th Cir.1986).[20] *Beard* is helpful in identifying the factors that the Supreme Court believed relevant to a determination whether a taxpayer had filed a qualifying return, but as the Tax Court in *Beard* itself acknowledged, "it is important to consider the factual circumstances under which this test has been applied." 82 T.C. at 777. Indeed, in analyzing the various prongs of the *Beard* test, the parties return to the Supreme Court case law on which it is based. So too we prefer to hold up the facts of this case directly to the Supreme Court case law, an approach adopted by a number of federal appellate courts in determining whether a filed return qualifies as such. *See, e.g., Waltner v. United States*, 679 F.3d 1329, 1333–34 (Fed.Cir.2012); *Neptune Mut. Ass'n, Ltd. of Bermuda v. United States*, 862 F.2d 1546, 1555 (Fed.Cir.1988); *Standard Office Bldg. v. United States*, 819 F.2d 1371, 1380–81 (7th Cir.1987); *Atlantic Land & Improvement Co. v. United States*, 790 F.2d 853, 858–59 (11th Cir.1986).

## A. The Structure and Purpose of D.C.Code § 47–4301

▮ The animating objective of statutes of limitations generally is to balance a defendant's need for repose against a plaintiff's need for sufficient time to identify liability. *See Colbert v. Georgetown Univ.*, 641 A.2d 469, 478 (D.C.1994) ("[I]n the application of any statute of limitations, it is the plaintiff's fundamental interest in the adjudication of a meritorious claim which must be balanced against the defendant's interest in repose."). Balancing these competing interests in the realm of taxation, the District Council has determined that, in the normal course, three years is sufficient time for the Mayor, through OTR, to identify taxpayer errors, conduct audits, and make necessary assessments. *See Lucia v. United States*, 474 F.2d 565, 570 (5th Cir.1973) ("[A] period of limitations runs against the collection of taxes ... because the [g]overnment, through [legislative] action, has consented to such a defense.") Beyond that time, "'the right to be free of stale claims ... prevail[s] over the right to prosecute them.'" *Woodruff v. McConkey*, 524 A.2d

---

18. *See District of Columbia Appleseed Ctr. for Law & Justice, Inc. v. District of Columbia Dep't of Ins., Sec., & Banking*, 54 A.3d 1188, 1213 (D.C.2012) ("Statutory interpretation is ... a holistic endeavor, in which we must consider not only the bare meaning of the word but also its placement and purpose in the statutory scheme.") (citations and internal quotation marks omitted).

19. D.C. Council, Comm. on Finance & Revenue, Report on Bill 13–586, "Tax Clarity Act of 2000" at 13 (Sept. 28, 2000) (stating that the rationale behind amendments to the statute of limitations provision "brings the SOL in the District in line with federal practice,

again making it less confusing for taxpayers and tax professionals alike"); *see also District of Columbia v. Craig*, 930 A.2d 946, 953 n. 7 (D.C.2007) (federal case law interpreting analogous statutes is persuasive authority).

20. In order to qualify as a return, the court in *Beard* stated, "[f]irst, there must be sufficient data to calculate tax liability; second, the document must purport to be a return; third, there must be an honest and reasonable attempt to satisfy the requirements of the tax law; and fourth, the taxpayer must execute the return under penalties of perjury." 82 T.C. at 777.

722, 727 (D.C.1987) (quoting *United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979)); *see also Kubrick,* 444 U.S. at 125, 100 S.Ct. 352 ("It goes without saying that statutes of limitations often make it impossible to enforce what were otherwise perfectly valid claims. But that is their very purpose, ... [and] [w]e should give them effect in accordance with what we can ascertain the legislative intent to have been.").

As we see it, this balance would be shifted if taxpayers were required to submit returns containing perfectly accurate and complete information so as to permit the correct calculation of tax in order to trigger the presumptive three-year limitation provision of § 47–4301(a). Such a rule would invert the application of the default three-year statute of limitation: only inaccuracies and omissions in a return that *do not* affect the correct calculation of taxes due would fall under the three-year statute of limitation.[21]

■ We question whether the District Council intended its default statute of limitation to apply so narrowly. Indeed, we read D.C.Code § 47–4301(d)(3) to weigh against such a constricted application of the three-year default. This subsection doubles the three-year statute of limitation when a taxpayer under-reports gross income in excess of 25 percent and thus indicates that under-reporting of gross income less than 25 percent still falls within the three-year default. A determination that any errors and omissions that affect the correct calculation of taxes take the case outside the three-year statute of limitation would thus be in tension with the 25 percent under-reporting exception.[22]

Again, we hesitate to read the statute in a way that would judicially erase much of the statutory protection from the pursuit of stale claims that the legislature has accorded to the taxpayer. *See Veney v. United States,* 681 A.2d 428, 433 (D.C. 1996) (" 'A basic principle of statutory construction is that each provision of the statute should be construed so as to give effect to all of the statute's provisions, not rendering any provision superfluous.' " (brackets removed) (quoting *Thomas v. District of Columbia Dep't of Emp't Servs.,* 547 A.2d 1034, 1037 (D.C.1988))).

■ OTR argues, however, that to require anything less than the information necessary for the correct calculation of tax would upset the District's self-assessment system of taxation. We acknowledge that Chapter 47 of the D.C.Code places responsibilities on the taxpayer but, as we read the statute, the Mayor, through OTR, also bears assessment responsibilities. The D.C.Code provides that the Mayor must obtain an income tax return from every liable taxpayer. D.C.Code § 47–1805.01(b) (2001). Moreover, "[as] soon as practicable after the return is filed, the Mayor shall examine it and shall determine the correct amount of tax." D.C.Code § 47–1812.01 (2001). The Mayor is given a number of tools to fulfill these obligations. "Whenever the Mayor deems it necessary, he may require any person, by notice served upon him, to make a return, render under oath such statements, or keep such records as he believes sufficient to show whether or not such person is liable to tax under this chapter and the extent of such liability." D.C.Code § 47–1812.02 (2001).

**21.** Assuming OTR would expend resources to pursue a taxpayer who made mistakes on a return that did not affect the amount of taxes owed, reason compels us to conclude that this would be the exception not the rule.

**22.** Allowing OTR unlimited time to pursue most claims would also be in tension with D.C.Code § 47–1805.04(f), which only requires OTR to maintain records for six years.

If the taxpayer fails to make and file a return in time, the Mayor is authorized to "make [a] return from his own knowledge and from such information as he can obtain through testimony or otherwise," and this return becomes prima facie evidence of the tax owed. D.C.Code § 47–1812.04 (2001). Likewise, if a taxpayer files a return that the Mayor deems deficient, the Mayor "may determine the gross income, adjusted gross income, and any itemized deductions necessary to arrive at the taxpayer's proper taxable income," and "[a]ny assessment made or proposed on the basis of such determinations shall be deemed prima facie correct." [23] D.C.Code § 47–1812.05 (2001 & Supp.2005). In short, far from imposing a unilateral obligation on the taxpayers, the Council has created a system of complementary responsibility: Taxpayers must file returns, and the Mayor, through OTR, must review those returns, catch the inevitable mistakes, and demand additional taxes, all in a timely fashion. Far from upsetting this balance, our interpretation of D.C.Code § 47–4301 maintains it.

OTR also calls our attention to the obligation to construe statutes of limitations strictly in favor of the government, citing *Badaracco v. Commissioner*, 464 U.S. 386, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984). But even as the Court in *Badaracco* acknowledged this obligation, it emphasized that all the parts of a statute of limitations must be read consistently with one another and with canons of statutory construction.[24] *See id.* at 401, 104 S.Ct. 756. We think we would be distorting the admonition of *Badaracco* were we to read into D.C.Code § 47–4301 an implicit requirement that would render other express provisions superfluous or contradictory, or were we to interpret this statute in a manner that is contrary to the manifest intent of the legislature to establish a graduated system of limitations periods that sets a broad three-year default and carves out narrower classes of cases with longer or no limitations periods. *See District of Columbia Appleseed Ctr. for Law & Justice*, 54 A.3d at 1215 (rejecting interpretation of a statute as "not faithful to . . . [its] language, overall structure, and purpose").

We do not rely on our examination of the statutory structure alone. We also look to the Supreme Court case law interpreting the analogous federal statute of limitations, case law which leads us to conclude both that our default three-year statute of limitation is not limited to cases where taxpayers provide perfectly complete and accurate information so as to correctly calculate taxes owed and that the information that Sunbelt Beverage did provide OTR within its D–65 was sufficient

**23.** Looking to these statutes we are not persuaded by OTR's argument that, unless a taxpayer supplies in its return all the information necessary for the correct calculation of taxes owed, OTR's collection efforts will be significantly impaired because it is prohibited from assessing an incorrect tax and thus cannot overtax a taxpayer and wait for the inevitable challenge. Rather, it seems a taxpayer provides OTR with incorrect or incomplete information at its peril. Moreover, OTR need not actually issue a final assessment to begin the process of recovering delinquent taxes. It may, as it did in this case, issue a proposed assessment, which the taxpayer may protest

under D.C.Code § 47–4312 (2001 & Supp. 2005).

**24.** In *Badaracco*, the taxpayer argued that his initial fraudulent return was a nullity and that his subsequent non-fraudulent supplemental return had triggered the statute of limitations. 464 U.S. at 396, 104 S.Ct. 756. The Court rejected this argument and declined to categorize as a "no return" a return more properly considered as a fraudulent return under the federal statute of limitations. *Id.* at 396–97, 104 S.Ct. 756.

to trigger the protection of the default three-year statute of limitation.

## B. The Supreme Court's Jurisprudence Regarding What Constitutes a Return Triggering the Federal Statute of Limitations

In a handful of decisions from the 1930s and 1940s, the Supreme Court considered whether the federal statute of limitations had been triggered in a variety of factual scenarios where taxpayers had made filing mistakes. First, in *Florsheim Bros. Drygoods Co. v. United States*, 280 U.S. 453, 50 S.Ct. 215, 74 L.Ed. 542 (1930), the Court determined that a document submitted to seek an extension for filing corporate taxes did not trigger the statute of limitations. The Court explained that "[t]he word 'return' is not a technical word of art," and it acknowledged that, if the document were in the nature of a return—*i.e.*, referencing the business's income, credits, and deductions—and if it were "honestly and reasonably ... intended" to serve as a return, it might constitute a return for statute of limitations purposes even if "defective or incomplete." *Id.* at 462, 50 S.Ct. 215. But the document in question in *Florsheim* had not been so intended. Rather it was "only a formal substitute for the simple letter originally planned" for requesting an extension to file a return. *Id.* at 464, 50 S.Ct. 215.

A few years later, in *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172, 55 S.Ct. 127, 79 L.Ed. 264 (1934), the Court examined such a "defective or incomplete" return and determined that it did qualify as a return triggering the statute of limitations. In *Zellerbach*, the taxpayer had filed a return for the correct tax but then failed to file a supplement required by an intervening change in the law. *Id.* at 175, 55 S.Ct. 127. The Court held that *"[p]erfect accuracy or completeness is not necessary to rescue a return from nullity*, if it purports to be a return, is sworn to as such, and evinces an honest and genuine endeavor to satisfy the law." *Id.* at 180, 55 S.Ct. 127 (emphasis added) (citation omitted). Thus the Court determined that an initial return, "though at the time of filing [it contains] omissions or inaccuracies ... such as to make amendment necessary," is still a return that triggers the statute of limitations. *Id.* In such a circumstance, "[s]upplement and correction ... will not take from a taxpayer, free from personal fault, the protection of a term of limitation already running for his benefit." [25] *Id.*

Subsequently, in *Germantown Trust v. Commissioner*, 309 U.S. 304, 60 S.Ct. 566, 84 L.Ed. 770 (1940), the Court examined a situation where a business entity self-identified for the correct tax liability but "in good faith, ma[de] what it [incorrectly] deem[ed] the appropriate return"—an informational fiduciary return form instead of a corporate income tax return form. *Id.* at 308–09, 60 S.Ct. 566. The Court noted that the return, which was filed "in good faith," reported gross income, deductions, and net income, "contained all of the data from which a tax could be computed and assessed although it did not purport to state any amount due as tax." *Id.* at 308, 60 S.Ct. 566. Citing *Zellerbach*, it explained that the information provided, though incomplete because it lacked a computation of tax, "[fell] short of rendering it no return whatever." *Id.* at 310, 60 S.Ct. 566.

---

**25.** In its initial recitation of the facts, the Court noted that this initial return would have permitted the calculation of taxes owed "by a simple computation dependent upon data fully supplied by the return." *Id.* at 175, 104 S.Ct. 756. But as demonstrated above, it did not rely on this fact in its holding.

Lastly, in *Lane–Wells*, the Court addressed the situation where a corporation was liable for two distinct taxes but only filed a return for one of them. The Court held that the taxpayer had an obligation to file a form for the corresponding tax. 321 U.S. at 223, 64 S.Ct. 511. It noted that the filed "returns [for the first tax] did not show the facts on which liability would be predicated [for the second], . . . and to obtain data on which corporations subject to the tax could be identified and assessed was the very purpose of requiring a separate return addressed to that liability." *Id.* The Court also indicated that it would not have mattered if the return for the first tax had contained all the information necessary to calculate the amount owed for the second tax, because the taxing authority "was fully within the statute in requiring that information in a separate return." *Id.* The Court explained that "[t]he purpose is not alone to get tax information in some form but also to get it with such uniformity, completeness, and arrangement that the physical task of handling and verifying returns may be readily accomplished." *Id.* The one-tax-one-return

rule of *Lane–Wells* ensures that taxpayers who file no return at all and taxpayers who file a return for one tax liability and not another are treated the same vis-à-vis the unpaid tax. *See Standard Office*, 819 F.2d at 1381.

From these Supreme Court cases,[26] we identify certain helpful guideposts for our analysis in this case. In order to trigger the protection of a statute of limitations, a taxpayer must file a document that is intended as a return, *Florsheim*, 280 U.S. at 462, 50 S.Ct. 215 and that self-identifies for the correct tax liability, *Lane–Wells*, 321 U.S. at 223, 64 S.Ct. 511 even if the return is only informational, *Germantown*, 309 U.S. at 308, 60 S.Ct. 566.[27] The return must provide information about the taxpayer's income, but perfect accuracy is not required. *Zellerbach*, 293 U.S. at 180, 55 S.Ct. 127; *Florsheim*, 280 U.S. at 462, 50 S.Ct. 215. Rather, if the return contains facts on which liability could be predicated, *Lane–Wells*, 321 U.S. at 223, 64 S.Ct. 511 but lacks some data that could properly be characterized as a supplement or an

---

**26.** The parties cite four federal appellate court cases addressing the question of when a return triggers the federal statute of limitations and citing the same Supreme Court precedent we discuss above. One deals with a *Lane–Wells* situation, distinguishable from this case, where the taxpayer failed to file a form for a second tax. *Durovic v. Commissioner*, 487 F.2d 36, 40 (7th Cir.1973). The remainder take opposite positions on the question at issue in this case. *Compare Neptune Mut. Ass'n, Ltd. of Bermuda*, 862 F.2d at 1555 (unless the taxpayer provides information permitting the IRS to calculate the actual taxes due, a return does not function as such), *and Atlantic Land & Improvement Co.*, 790 F.2d at 858 (same), *with Standard Office*, 819 F.2d at 1382 (return still triggered statute of limitations even though minor discrepancy between calculation of tax basis on filed form and correct form precluded correct calculation of tax). But none has facts analogous to this case, and we do not find them illuminat-

ing on the issue of whether Sunbelt Beverage's returns triggered the District's statute of limitations.

**27.** OTR relies heavily on *Germantown*, arguing that because all the information necessary to accurately calculate taxes due was in the taxpayer's return in that case, a return does not qualify as such without the same quantum and quality of information. But the Court in *Germantown* had no occasion to discuss or decide whether it would have come to a different conclusion had the return demonstrated liability but omitted some information that would have affected an accurate computation of the taxes owed. Moreover, we note that the Court, in articulating its holding, favorably cited *Zellerbach*, in which, as discussed above, the Court held that "[p]erfect accuracy or completeness is not necessary." 293 U.S. at 180, 55 S.Ct. 127.

amendment to the original form, *Zellerbach*, 293 U.S. at 180, 55 S.Ct. 127 the original form is not a nullity.

## C. The Sufficiency of the Information Provided in Sunbelt Beverage's Mistakenly Filed D-65

█ Examining the facts of this case against this backdrop of Supreme Court precedent, we conclude that Sunbelt Beverage's D-65 triggered the default three-years statute of limitation under § 47-4301(a). There is no dispute that Sunbelt Beverage filed its D-65, honestly but mistakenly, in an effort to "satisfy the law." [28] *Cf. Zellerbach*, 293 U.S. at 180, 55 S.Ct. 127. Its D-65 was on a government-sanctioned form for business franchise tax and, by filing this return, Sunbelt Beverage identified itself as a company doing business in the District and potentially subject to this tax. Sunbelt Beverage accurately listed on this form information about its gross national income—well in excess of the $12,000 filing limit for a D-65 [29]—deductions, and ordinary income.

Furthermore, Sunbelt Beverage identified Sunbelt Holding (which also filed business franchise tax forms in the District) as a corporate parent and Sunbelt Beverage provided, as part of its requisite D-65 supporting schedules, Sunbelt Holding's name, address, and federal employer tax identification number. Sunbelt Holding had in turn provided OTR with its gross national income, deductions, ordinary income, and total taxable income from the District, all of which came from Sunbelt Beverage. Indeed, it appears the reason that Sunbelt Beverage filed the D-65 was that it believed it could act as a pass-through for Sunbelt Holding (as a partnership may under the federal code), and Sunbelt Beverage continues to maintain that Sunbelt Holding paid all the tax on Sunbelt Beverage's income attributable to the District.[30]

The only information that Sunbelt Beverage failed to provide (because the D-65 does not ask for it) was its apportionment factor. That information would not have told OTR whether Sunbelt Beverage was liable to pay tax, however; it just would have told OTR precisely how much, if any, tax was due. Moreover, this information would have only reduced the amount of tax owed by limiting Sunbelt Beverage's ordinary income subject to tax. In light of all of the other information provided in an effort to fulfill its tax obligations in the District, Sunbelt Beverage's failure to provide OTR with its apportionment factor can be categorized as an "omission[ ] . . . such as to make amendment necessary" to permit the correct calculation of tax, *Zellerbach*, 293 U.S. at 175, 55 S.Ct. 127; we do not think it rendered Sunbelt Beverage's return a nullity.

**28.** OTR challenges whether this mistake was reasonable, which we address in Section D *infra*.

**29.** We acknowledge that this $12,000 filing limit is tied to gross income attributable to the District, not national income. *See supra* note 7. But even though gross income attributable to the District is a determinative factor in whether a business is permitted to file a D-65 or a D-30, OTR does not ask taxpayers filing a D-65 or a D-30 to state that sum (although OTR in 2003 and 2004 did ask taxpayers filing a D-30 to state whether their gross income national-ly—not their gross income attributable to the District—was greater or less than $12,000). OTR has never argued that Sunbelt Beverage's returns were nullities because they did not contain information about Sunbelt Beverage's gross income attributable to the District.

**30.** OTR asserts that it had no reason to link Sunbelt Holding's D-20s to Sunbelt Beverage's D-65s, but this seems a primary purpose of asking a taxpayer to identify any parent corporations and partnerships.

The fact that Sunbelt Beverage's error was so glaring reinforces our conclusion that the information Sunbelt Beverage provided was sufficient to trigger the default three-year statute of limitation. The substantial disparity in this case between Sunbelt Beverage's gross national income and the $12,000 income limit should have alerted OTR to a potential filing error and a need to calculate some amount of business franchise tax. We see no need to readjust the balance of Sunbelt Beverage's interest in repose and OTR's need for time to discern tax liability in a situation where the error was likely to be caught with cursory review. *See Zellerbach,* 293 U.S. at 182, 55 S.Ct. 127 ("An examiner needs more time for an audit when errors are latent, to be discovered only by digging into books and vouchers, than when errors are apparent upon a bare inspection of the record."); *see also Colony, Inc. v. Commissioner,* 357 U.S. 28, 36, 78 S.Ct. 1033, 2 L.Ed.2d 1119 (1958) (discussing the extension for 25 percent under-reporting of income—created because Congress recognized in such cases that the government was "at a special disadvantage in detecting errors"). Indeed, once OTR focused on Sunbelt Beverage's return, it was able, without apparent difficulty, to get the in-formation it needed to make what it thought was an accurate assessment.

## D. OTR's Reasonableness Test

OTR cursorily argues that regardless of the information that Sunbelt Beverage provided in its D–65, its error in filing this form was so unreasonable as to render its return a nullity for statute of limitations purposes. We disagree. For the reasons set forth above, the totality of the circumstances in this case "evinces an honest and genuine endeavor to satisfy the law," *Zellerbach,* 293 U.S. at 180, 55 S.Ct. 127 and, particularly in light of OTR's concession that Sunbelt Beverage's mistake was honestly made, we are not persuaded that Sunbelt Beverage's mistake was so wholly unreasonable as to nullify its filed returns.

OTR points to Sunbelt Beverage's failure to follow the instructions that accompanied the D–65 and that, OTR asserts, "plainly explained" a business taxpayer's filing obligations in the District. This proves too much, however, since presumably the failure to follow instructions is the primary cause of taxpayer error. Moreover, we have examined these instructions and have found them far from plain. They do not make us question the authenticity of Sunbelt Beverage's effort to comply with the District tax laws.[31]

---

**31.** The D–65 instructions indicate that the default form that partnerships file is a D–65. In the first paragraph, the instructions direct that, "[e]xcept for partnerships required to file an unincorporated business franchise tax return, DC Form D–30, all partnerships engaged in any trade or business in DC or which received income from sources in DC must file a DC Form D–65." D–65 Instructions at A. In the fourth paragraph the instructions state that "[a] limited liability company is classified as a partnership." *Id.*

Furthermore, the instructions direct LLCs to think of themselves in the District taxation system as they do in the federal system. The only exception to filing as a partnership "is if the IRS has classified you differently." *Id.*

Otherwise, the instructions direct that limited liability companies "must use the same classification on your DC return as used on your federal return." Businesses that file a D–65 are instructed to attach their federal Form 1065, along with the 1065's supporting schedules. *Id.* at H.; *see also id.* at E (directing businesses to "[u]se the same method of accounting on your D–65 as that used on your federal tax return"). In the federal system, all multiple-member LLCs like Sunbelt Beverage are treated as partnerships and pass-through entities unless they affirmatively elect otherwise. "Taxation of Limited Liability Companies," IRS Publication 3402 (2010), http://www.irs.gov/publications/p3402/ar02.html.

OTR also focuses on the $12,000 limit for unincorporated businesses with gross income attributable to the District and asserts that Sunbelt Beverage's error was unreasonable because its national gross income vastly exceeded this limit. But if Sunbelt Beverage could honestly but mistakenly believe that it was not an "unincorporated business" required to file a D–30, *see supra* note 31, it might disregard the $12,000 limit and still "evince[ ] an honest and genuine endeavor to satisfy the law." *See Zellerbach*, 293 U.S. at 180, 55 S.Ct. 127.

Lastly, OTR places great weight on Sunbelt Beverage's failure to file an explanation accompanying its D–65s as directed by an instruction on the form itself. OTR would have us read this instruction to direct that "every taxpayer filing a D–65 must attach an explanation as to why it is not filing a D–30." It does not. It states only that, "[i]f you are filing this Form D–65, instead of Form D–30, attach an explanation." Again, if Sunbelt Beverage honestly believed that it was not required to file a D–30, it could have likewise determined that it was not filing a D–65 "instead of" a D–30. We are not convinced that the failure to follow this particular instruction belies all other evidence of Sunbelt Beverage's genuine desire to comply with the tax laws.

### III.  Conclusion

 "A statute of limitation is an almost indispensable element of fairness as well as of practical administration of an income tax policy." *Rothensies v. Electric*

*Storage Battery Co.*, 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296 (1946). As the Supreme Court explained in *Rothensies:*

> It probably would be all but intolerable, at least Congress has regarded it as ill-advised, to have an income tax system under which there never would come a day of final settlement and which required both the taxpayer and the Government to stand ready forever and a day to produce vouchers, prove events, establish values and recall details of all that goes into an income tax contest.

*Id.* at 301, 67 S.Ct. 271. We conclude that this is not a case in which Sunbelt Beverage must be forced to "stand ready forever and a day." Sunbelt Beverage filed a mistaken but honest and genuine return that ultimately prompted an assessment for unpaid taxes but should have done so within the default three-year statute of limitation. For all the reasons set forth above, we determine that OTR was barred by D.C.Code § 47–4301(a) when, after the three-year limitation period had expired, it sought to pursue Sunbelt Beverage for its filing mistake.

Accordingly, the order granting Sunbelt Beverage summary judgment is

*Affirmed.*

---

After reading the first section of the instructions, we have little difficulty envisioning how an LLC like Sunbelt Beverage, effectively owned and controlled by a corporation, might mistakenly believe that it should file a D–65. The subsequent text under the heading "Who Must File Form D–30 Instead of Form D–65" does not make it clear that such an action would be improper. Although this section states that there is a $12,000 cap on gross income derived from the District for unincorporated businesses seeking to file a D–65, "unincorporated business," is defined to exclude "trade[s] or business[es] conducted or engaged in by any corporation," *id.*, a category that includes Sunbelt Beverage.